486 A.2d 363

COMMONWEALTH of Pennsylvania, Appellee,

v.

Charles J. ALLEN, Appellant.

COMMONWEALTH of Pennsylvania, Appellant,

v.

Charles J. ALLEN, Appellee.

Supreme Court of Pennsylvania.

Argued Oct. 25, 1984.

Decided Dec. 21, 1984.

502

Kenneth C. Sandoe, Myerstown, for Charles J. Allen.

John E. Feather, Asst. Dist. Atty., for the Com.

Barbara J. Hart, Reading, amicus curiae, for Pennsylvania Coalition Against Domestic Violence.

Before Nix, C.J., and LARSEN, FLAHERTY, McDERMOTT, HUTCHINSON, ZAPPALA and PAPADAKOS, JJ.

## OPINION OF THE COURT

HUTCHINSON, Justice.

These cross-appeals by allowance from an opinion and order of Superior Court, 322 Pa.Super. 424, 469 A.2d 1063, require us, for the first time, to construe the provisions of the Protection From Abuse Act (Act), of October 7, 1976, P.L. 1090, No. 218, *as amended,* 35 P.S. §§ 10181–10190 (Supp.1984–85). Specifically, we must determine whether principles of double jeopardy and compulsory joinder bar the prosecution of an individual for simple assault, criminal trespass and rape after that individual has been found in indirect criminal contempt for violating a court order entered pursuant to the Act. Because the Protection From Abuse Act has its roots in equity and is essentially civil, we

hold that a court's use of its inherent power to enforce its orders under the Act through contempt does not preclude a later criminal prosecution to protect the Commonwealth's interest in preventing crime.

In this case Lebanon County Common Pleas denied Allen's pre-trial motion to dismiss the criminal charges. Superior Court affirmed in part and reversed in part. It held that on the facts of this case, the criminal contempt under the Act and the charge of simple assault involve the same elements, and therefore double jeopardy barred the simple assault prosecution. Superior Court affirmed Common Pleas' denial of Allen's double jeopardy challenges to the criminal trespass and rape charges and remanded these charges for trial. Superior Court also held that Sections 109–112 of the Crimes Code, 18 Pa.C.S. §§ 109–112, cited by Allen, relating to second prosecutions in various instances, did not apply to this case.

We agree with Superior Court that the cited sections of the Crimes Code do not apply, and that double jeopardy does not bar the prosecutions for criminal trespass and rape. We disagree, however, with Superior Court's conclusion that the prosecution for simple assault is barred by double jeopardy, and hold that indirect criminal contempt and simple assault are separate offenses for double jeopardy purposes because they serve distinct purposes and require different elements of proof even though they may arise out of the same course of conduct. We believe this holding is consistent with both the facts of this case and the law of double jeopardy as developed by the United States Supreme Court, and is also faithful to the intent of the Legislature in passing the Protection From Abuse Act.

On April 9, 1980, Julianne L. Allen, the wife [1] of the defendant, filed a "Petition Pursuant to the Protection From Abuse Act" seeking a protective order under Section 10186 of the Act. Following a hearing, Lebanon County Common Pleas Court entered an order which provided, *inter alia,* that defendant was ". . . enjoined and ordered to

---

1. The parties, although living separately at the time the petition was filed, were still married at that time. They were divorced in 1981.

refrain from physically abusing, striking or harassing petitioner, Julianne L. Allen, and their minor children from this time forward and for the duration of this order." R.R. 3a.[2]

Subsequently, petitioner alleged that on the night of May 7–8, 1980, defendant violated the order by forcibly entering her residence[3] and physically abusing her. On May 16, Jonestown Borough Police, acting on information provided by petitioner, filed a criminal complaint against defendant on charges of simple assault and trespass. On May 19, petitioner requested that defendant be charged with contempt, pursuant to Section 10190 of the Act.[4] Defendant was arraigned on the contempt charge and, failing to post bail, remained in Lebanon County Prison until May 28, the date of the contempt hearing.[5] After the hearing, at which

2. Such relief is provided for by Section 10186(a)(1), which provides that the Court of Common Pleas "shall be empowered to grant any protection order or approve any consent agreement to bring about a cessation of abuse of the plaintiff or minor children, which may include: ... [d]irecting the defendant to refrain from abusing the plaintiff or minor children."

3. This residence was not the former residence of the family, but a new residence to which petitioner had moved following entry of the order.

4. Section 10190 provides, in relevant part:
§ 10190. Contempt
(a) Upon violation of a protection order or a court approved consent agreement the court may hold the defendant in indirect criminal contempt and punish him in accordance with law.
(b) Notwithstanding any provision of the law to the contrary any sentence for this contempt may include imprisonment up to six months or a fine not to exceed $1,000 or both and the defendant shall not have a right to a jury trial on such a charge.
35 P.S. § 10190 (Supp.1984–85).

5. The hearing was conducted pursuant to Section 10185 of the Act, which provides, in relevant part:
§ 10185. Hearings
(a) Within ten days of the filing of a petition under this act a hearing shall be held at which the plaintiff must prove the allegation of abuse by a preponderance of the evidence. The court shall advise the defendant of his right to be represented by counsel.
(b) The court may enter such temporary orders as it deems necessary to protect the plaintiff or minor children from abuse, upon good cause shown in an ex parte proceeding. Immediate and present danger of abuse to the plaintiff or minor children shall constitute good cause for purposes of this section.

both petitioner and defendant presented evidence, the court found defendant in contempt of the April 18 order. The court ordered defendant to pay a fine of $750.00 and costs, and discharged him from prison.

On June 3, 1980, the Jonestown Borough Police filed another criminal complaint against defendant for raping his wife on May 7–8. All three criminal charges were consolidated for preliminary hearing and trial. Defendant filed an Omnibus Pretrial Motion to Quash the three criminal informations on the grounds that prosecution of these charges was barred by double jeopardy. Lebanon County Common Pleas *en banc* denied the motion. Defendant filed a timely appeal to Superior Court, which affirmed the trial court on the criminal trespass and rape charges, but reversed on the simple assault charge.

We granted both parties' petitions for allowance of appeal. The Commonwealth contends that Superior Court erred in dismissing the simple assault charge, while Allen contends that Superior Court erred in holding that the criminal trespass and rape charges were not barred by double jeopardy.

■ Initially, we agree with Superior Court that Sections 109–112 of the Crimes Code, 18 Pa.C.S. §§ 109–112, barring prosecutions in various circumstances,[6] and the "compulsory joinder rule" of *Commonwealth v. Campana*, 452 Pa. 233, 304 A.2d 432, *vacated and remanded*, 414 U.S. 808, 94 S.Ct. 73, 38 L.Ed.2d 44 (1973) (*Campana I*), *on remand*, 455 Pa. 622, 314 A.2d 854, *cert. denied*, 417 U.S. 969, 94 S.Ct. 3172, 41 L.Ed.2d 1139 (1974) (*Campana II*), do not

---

6. Section 109 addresses prosecutions barred by a former prosecution for the same offense; Section 110 sets forth conditions when a prosecution is barred by a former prosecution for a different offense; Section 111 describes the situation when a prosecution would be barred by a former prosecution in a foreign jurisdiction; and Section 112 provides qualifications on Sections 109–111 where the former prosecution was before a court lacking personal or subject matter jurisdiction, was procured fraudulently by the defendant, or where the proceeding which produced the conviction was ultimately held invalid.

apply in this case. This inquiry is necessary because, as we recently stated:

It is ... appropriate to begin our ... inquiry by determining the applicability of section 110 to the ... facts. In so proceeding, we are mindful that if the provisions of section 110 are satisfied, there will have also been compliance with the requirement as set forth under the *Campana* rule. *The necessity to consider the double jeopardy complaints will only arise if it is determined that the statutory provision does not require the grant of the relief requested.*

*Commonwealth v. Hude,* 500 Pa. 482, 489, 458 A.2d 177, 180 (1983) (emphasis added).[7] In *Hude,* the identity between Section 110 and the *Campana II* rule was further demonstrated in these terms:

This Court's decisions in *Campana I* and *Campana II* ultimately designed a rule of compulsory joinder which required the criminal offenses arising from the same criminal episode to be disposed of in one prosecution. *Commonwealth v. Beatty,* 500 Pa. 284, 455 A.2d 1194 (1983). In the interim between *Campana I* and *Campana II*, the legislature promulgated section 110 which set forth when prosecution would be barred by former prosecution for a different offense.

While this Court in its *Campana* decisions spoke in terms of the obligation to join offenses, and the legislature in section 110 provided a bar of prosecution where joinder had not occurred, it is evident that our Court rule was in harmony with section 110. *See Commonwealth v. Beatty, supra;* ....

The compulsory joinder rule set forth in *Campana I and II* and the provisions of section 110 were designed to serve two distinct policy considerations: (1) to protect a person accused of crimes from governmental harassment

7. Manifestly, only Section 110 has even arguable applicability to this case, since defendant's argument is that the criminal contempt prosecution bars prosecution for the criminal trespass, simple assault and rape charges, and Sections 109, 111 and 112 are inapplicable to the facts of this case.

of being forced to undergo successive trials for offenses stemming from the same criminal episode; and (2) as a matter of judicial administration and economy, to assure finality without unduly burdening the judicial process by repetitious litigation.

*Id.*, 500 Pa. at 487–489, 458 A.2d at 179–180 (footnotes and citations omitted).

■ While the provisions of Part I of Title 18 are generally applicable to offenses defined by Title 18, Section 107 clearly excepts criminal contempt from the requirements of Sections 109–112:

§ 107. Application of preliminary provisions.

(a) General rule.—The provisions of Part I of this title (relating to preliminary provisions) are applicable to offenses defined by this title or by any other statute.

. . . .

(c) Exceptions.—This section does not affect the power of a court to declare forfeitures or *to punish for contempt or to employ any sanction authorized by law for the enforcement of an order or a civil judgment or decree,* nor does it bar, suspend, or otherwise affect any right of liability to damages, penalty, forfeiture or other remedy authorized by law to be recovered or enforced in a civil action, regardless of whether the conduct involved in such civil action or matter constitutes an offense defined in this title.

18 Pa.C.S. § 107. Thus, Section 110's prohibition against a second prosecution after a previous prosecution for another crime is inapplicable to this case, where the former "crime" is criminal contempt. Moreover, Section 107 provides not only for contempt in general, but also for "any sanction authorized by law." Such a sanction appears specifically in Section 10 of the Act of June 23, 1978, P.L. 513, No. 1978–81, amending the 1976 Protection From Abuse Act, *supra,* 35 P.S. § 10190 (Supp.1984–85). Because Section 110 does not apply, neither do the requirements set forth in our *Campana II* decision. *See Hude, supra; Beatty, supra.*

■ Requiring joinder of the contempt charge with criminal charges to which the facts may give rise would not advance the policies underlying *Campana* and Section 110, but would do positive harm to the utility of the Protection From Abuse Act. Government harassment would not be avoided, because the contempt proceeding is privately triggered by the person in whose favor the order was entered, *i.e.*, the abused spouse or children. The governmental authorities are not necessarily involved in bringing the contempt proceeding; indeed, they may not even be aware that it is brought. They therefore have no real control over that proceeding and should not be prevented by it from protecting the Commonwealth's interest against violations of criminal law. Similarly, judicial economy would not be served by requiring joinder. To require joinder in such circumstances would not be in accord with the *ratio decidendi* of *Commonwealth v. Beatty, supra. See also* the concurring opinion of Mr. Justice Flaherty, joined by Mr. Justice Hutchinson. Moreover, even if the court had knowledge of the two proceedings, it would then either have to postpone the contempt hearing or artificially accelerate the criminal charges. Such procedures would benefit neither party and would decrease, not increase, effective judicial administration.

A joinder requirement would also fail to serve the legislature's intent in passing the Protection From Abuse Act. As the Commonwealth points out, and as *amici* eloquently and abundantly illustrate, domestic violence and spousal and child abuse are serious and widespread societal problems which are effectively beyond reach, absent such legislation. The abused spouse's ability to promptly seek enforcement of injunctions against violence under the Act is important to its functioning.

■ The inapplicability of Crimes Code Section 110 to this Act, however, requires us to set out our view on the specifics of the double jeopardy issue. The United States Supreme Court most recently addressed these issues in *Missouri v. Hunter*, 459 U.S. 359, 103 S.Ct. 673, 74 L.Ed.2d

535 (1983) and *Ohio v. Johnson,* —— U.S. ——, 104 S.Ct. 2536, 81 L.Ed.2d 425 (1984). Both cases reaffirmed two fundamental points of double jeopardy analysis. The first is that the Double Jeopardy Clause of the Fifth Amendment

> "protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense." *Brown v. Ohio,* 432 U.S. 161, 165, 53 L.Ed.2d 187, 97 S.Ct. 2221 [2225] (1977), quoting *North Carolina v. Pearce,* 395 U.S. 711, 717, 23 L.Ed.2d 656, 89 S.Ct. 2072 [2076] (1969).

*Ohio v. Johnson,* —— U.S. ——, ——, 104 S.Ct. 2536, 2541, 81 L.Ed.2d 425, 433 (1984). The second fundamental point those cases reaffirm is that in considering whether the protections against second prosecutions or multiple punishments for the same offense have been violated, the test of *Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), remains vital:

> The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not.

*Id.* at 304, 52 S.Ct. at 182. *See also Illinois v. Vitale,* 447 U.S. 410, 100 S.Ct. 2260, 65 L.Ed.2d 228 (1980). *Missouri v. Hunter* also made clear, however, that the rule of statutory construction set forth in *Blockburger,* and reaffirmed in *Whalen v. United States,* 445 U.S. 684, 100 S.Ct. 1432, 63 L.Ed.2d 715 (1980), must also be considered:

> "The assumption underlying the rule is that Congress *ordinarily* does not intend to punish the same offense under two different statutes. Accordingly, where two statutory provisions proscribe the 'same offense,' they are construed not to authorize cumulative punishments *in the absence of a clear indication of contrary legislative intent.*" 445 U.S. at 691–692, 63 L.Ed.2d 715, 100 S.Ct. 1432 [1437–1438] (emphasis added).

We went on to emphasize the qualification on that rule: "[W]here the offenses are the same ... cumulative sentences are not permitted, *unless elsewhere specially authorized by Congress.*" Id., at 693, 63 L.Ed.2d 715, 100 S.Ct. 1432 [1438] (emphasis added).

*Missouri v. Hunter,* 459 U.S. 359, 366–367, 103 S.Ct. 673, 678–679, 74 L.Ed.2d 535 (1983) (emphasis in original).

With these principles in mind, we proceed to the specific offenses in this case. The double jeopardy protection here is protection against a second prosecution for the same offense after conviction (*autrefois convict*). Defendant alleges that his conviction for contempt bars the subsequent criminal prosecutions. We must, therefore, first determine whether the contempt proceeding was criminal in nature.

The Commonwealth argues it is not. On that point we must disagree.[8]

■ Plainly, the contempt involved in this case was indirect criminal contempt. The contempt was criminal in nature because it was used to protect both the dignity and authority of the court and the interest of the general public. *Commonwealth v. Charlett,* 481 Pa. 22, 391 A.2d 1296 (1978). The contempt was indirect because it did not occur in the actual presence of the court, or directly affect a proceeding then in progress. *Commonwealth v. Maurizio,* 496 Pa. 584, 437 A.2d 1195 (1981). Indeed, the Protection From Abuse Act stipulates that violators of orders entered pursuant to the Act may be held in indirect criminal contempt. 35 P.S. § 10190. Thus, the finding of contempt involved a proceeding which was criminal in nature, and is thus a proceeding with implications for double jeopardy analysis.

■ However, applying the tests enunciated by the United States Supreme Court, it is evident that the charges of rape and criminal trespass are not barred by double jeopar-

---

**8.** Of course, if jeopardy did not attach to the contempt proceeding, no constitutional protections would be implicated and our inquiry would be at an end.

dy because they both involve proof of a fact which the finding of contempt does not. Rape[9] requires proof of "sexual intercourse with another person not his spouse" by forcible compulsion or threat thereof. Criminal trespass[10] requires that a person, "knowing that he is not licensed or privileged to do so," enters or remains in a building by subterfuge or breaks into any building or occupied structure. The finding of indirect criminal contempt in this case involved knowledge of the court's order under the Act and wilful disobedience of that order. Rape and criminal trespass thus are not merely separate offenses in one particular or other, but are wholly different offenses from indirect criminal contempt. Superior Court was, therefore, clearly correct in holding that double jeopardy did not bar prosecution of defendant on these charges.

■ There remains the charge of simple assault. Superior Court, relying on *People v. Gray*, 69 Ill.2d 44, 12 Ill.Dec. 886, 370 N.E.2d 797 (1977), *cert. denied sub nom. Illinois v. Gray*, 435 U.S. 1013, 98 S.Ct. 1887, 56 L.Ed.2d 395 (1978),[11] held that the criminal contempt and the charge of simple assault involved the same elements, thus barring the prosecution for simple assault. Despite the thoughtful opinion of Judge McEwen, we note that not all jurisdictions have reached the same result as Illinois and Superior Court on this point.[12]

■ We find the dissent in *Gray* persuasive. That dissent, which is echoed in the trial court's opinion in this case, succinctly states the distinct elements of criminal contempt and the important functions which they serve.

**9.** 18 Pa.C.S. § 3121.

**10.** 18 Pa.C.S. § 3503.

**11.** In this regard, we note that defendant's assertion that the United States Supreme Court's denial of certiorari in *Gray* amounted to "giving its approval to the Supreme Court of Illinois' decision," Brief for Appellant Allen at 12, is clearly erroneous. *See Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 94 n. 11, 103 S.Ct. 2890, 2898, n. 11, 77 L.Ed.2d 490, 499, n. 11 (1983).

**12.** *See Annot.* 26 A.L.R. 4th 950 (1983).

In the case at bar, ... the contempt conviction only held that the defendant had wilfully committed certain acts which violated the court order.[13] The court order could have been violated by an otherwise legal act.

The significance of the criminal contempt element of wilful disobedience becomes more apparent when the respective purposes of contempt and ordinary criminal offenses are considered. The element of wilful disobedience is not a mere formal requirement, but is directly related to the stated purpose of criminal contempt proceedings—protecting the dignity of the judiciary: "Criminal contempt is conduct which is directed against the dignity and authority of the court or a judge acting judicially * * *." ... "Criminal contempt consists of acts tending to lessen the dignity or impede the process of the court, and such proceedings are instituted to vindicate the authority of the court." ... While it has been suggested that the role of both criminal contempt and ordinary criminal offenses is to protect the institutions of government and the enforcement of their mandates ... it is my belief that contempt retains its distinctive function in specifically protecting our judicial system from abuse. Thus, I believe that the additional element of wilful disobedience in this case is neither immaterial nor insubstantial in distinguishing criminal contempt from ordinary offenses.

. . . .

The necessity of criminal contempt as a tool for deterring abuse of the judiciary demands that a judge not be required to consider the consequences of foreclosing subsequent criminal prosecutions. As the People note in their brief, the majority holding, in effect, gives the trial judge the power to decide whether a contumacious party will be charged with a criminal offense, thus usurping the function of the State's Attorney. It might also be noted that in most cases of a violation of a court order, the

13. So too in the present case, where the order entered by Common Pleas could have been violated by vandalism against petitioner's property or harassing telephone calls.

criminal contempt is really initiated or prosecuted by the aggrieved party; the contempt is not prosecuted in the name of the People and the State's Attorney is not even notified or aware of the proceedings.

*People v. Gray, supra,* 69 Ill.2d 44, 57–59, 12 Ill.Dec. 886, 891,–892, 370 N.E.2d 797, 802–803 (Ryan, J., dissenting) (footnote added). *See also Commonwealth v. Gallarelli,* 372 Mass. 573, 362 N.E.2d 923 (1977) (contempt finding not a bar to prosecution for interference with administration of justice and conspiracy to influence a jury when charges arose from the same incident).

■ Thus in the present case, the indirect criminal contempt proceeding involves elements not necessary to a finding of simple assault,[14] even though assaultive behavior was involved in the contempt. Defendant could have wilfully violated the court order by any number of actions, many of which would not have involved assault, or even physical contact or presence. Moreover, the contempt order's purpose was protection of the court's dignity and enforcement of its order, not punishment for criminal assault. *Commonwealth v. Beatty, supra,* concurring opinion by Mr. Justice Flaherty, joined by Mr. Justice Hutchinson. *See also Commonwealth v. Norris,* 498 Pa. 308, 446 A.2d 246 (1982) (imposition of separate though concurrent sentences for rape and corruption of a minor did not violate double jeopardy or the "same offense" doctrine). We hold, therefore, that under the *Blockburger* test, indirect criminal contempt and simple assault do contain the requisite "separate elements" and vindicate different interests. Therefore, prosecution on the substantive criminal charge after a finding of contempt in violating the injunction against abuse does not violate double jeopardy.

**14.** 18 Pa.C.S. § 2701. The statute defines simple assault as follows:
(a) Offense defined.—A person is guilty of assault if he:
(1) attempts to cause or intentionally, knowingly or recklessly causes bodily injury to another;
(2) negligently causes bodily injury to another with a deadly weapon; or
(3) attempts by physical menace to put another in fear of imminent serious bodily injury.

To hold criminal prosecutions barred by a finding of indirect criminal contempt would either gravely impair the Commonwealth's interest in punishing crime or severely restrict the practical utility of the Protection From Abuse Act. Advance prevention of physical and sexual abuse is the primary goal of the legislature in passing the Abuse Act. To preclude subsequent prosecutions for assault (or rape or sexual abuse of children) after a finding of contempt would encourage abusive persons to continue violent criminal actions against their spouses or children without risking any penalty more severe than the six months the Act provides for contempt. In the alternative, victims, courts and prosecutors would be forced to forego the only sanction against violation of orders under the Protection From Abuse Act—its contempt provisions—in order to punish an assaultive spouse.

Such results were anticipated over a decade ago by the Federal District Court for the Southern District of New York. In *United States v. Mirra*, 220 F.Supp. 361 (S.D.N.Y.1963), Mirra was summarily found in contempt for throwing a chair at the prosecutor. In his subsequent prosecution for assault on a Federal officer, he pleaded the contempt conviction as a bar under double jeopardy. The court replied to this theory in the following terms:

Let us consider by way of illustration the consequences of upholding Mirra's claim in the context of an extreme but not wholly improbable case that could have arisen after, and out of, Mirra's contempt conviction. Assume that Mirra's projectile had received more accurate a propulsion and had scored on its intended target—the Assistant United States Attorney. And assume further the grisly and morbid fact that the Assistant United States Attorney had sustained an injury which ultimately proved fatal. To sustain Mirra's claim would, in effect, grant a summary contemnor immunity from a homicide prosecution—an unconscionable result. Merely to state the case suffices to reveal what must preforce be the answer to Mirra's theory.

*Id.* at 366. We hold that the same implied answer, no double jeopardy, is required in this case.

Order of Superior Court affirmed in part and reversed in part. Case remanded for trial on the charges of simple assault, criminal trespass, and rape.

LARSEN, J., joins this opinion and files a concurring opinion.

NIX, C.J., concurs in the result.

ZAPPALA, J., concurs in the result.

LARSEN, Justice, concurring.

I join the majority opinion. I write separately to emphasize that the contempt provisions of the Protection From Abuse Act [1] are available and intended not only to punish an abusive spouse for past abusive behavior, but are also available and intended to physically restrain (i.e., jail) an abusive spouse in order to prevent future occurrences of abuse. There is much peace of mind in knowing that the abuser cannot reach the object of the abuse.

Additionally, I note that the General Assembly has clearly expressed its intention that the rights and remedies set forth in the Protection From Abuse Act are supplementary to an abuse victim's civil or criminal remedies. Section 10189 of the Act, 35 P.S. § 10189, provides:

> Unless otherwise indicated in this act, any proceeding under this act shall be in accordance with the Rules of Civil Procedure *and shall be in addition to any other available civil or criminal remedies.*

It is obvious, therefore, that requiring joinder of contempt charges for violation of a court order under the Act with criminal charges arising from the abusive conduct that constitutes that violation would contravene the explicit mandate of the legislature and thwart its salutary goals.

1. Act of October 7, 1976, P.L. 1090, No. 218, *as amended,* 35 P.S. §§ 10181–10190.