504 A.2d 350

**Ruth Brozgal ROSENBERG, Appellant,**

v.

**Lawrence S. ROSENBERG, Appellee.**

Superior Court of Pennsylvania.

Argued Oct. 29, 1985.

Filed Jan. 31, 1986.

Robert C. Capristo, Pittsburgh, for appellant.

Calvin J. Webb, II, Edensburg, for appellee.

Before WIEAND, DEL SOLE and HESTER, JJ.

WIEAND, Judge:

This appeal is a last ditch effort by a mother, who has been awarded primary custody of two daughters, to prevent visitation by the girls' father. We affirm the order of the Honorable Eugene Creany who, after carefully considering

the mother's objections, permitted visitation by the father. However, we will modify the order by eliminating the "automatic" penalty imposed by the hearing court in the event of the mother's refusal to comply with the visitation feature of the order.

Dr. Lawrence S. Rosenberg and Ruth Rosenberg, husband and wife, are the parents of two daughters, Rebecca, age ten, and Idra, age seven. The Rosenberg marriage fell on hard times and, on January 31, 1984, Ruth commenced an action in divorce. In March, 1984, both spouses filed petitions under the Protection from Abuse Act of October 7, 1976, 35 P.S. § 10181 et seq. The custody of the parties' daughters was an immediate and pressing issue, and, on April 2, 1984, the court awarded temporary custody of the girls to their mother and established a schedule of visitation for their father. Four amended orders dealing with support and visitation were entered in the next three months. The parties were divorced on July 13, 1984.

On August 6, 1984, Dr. Rosenberg filed a petition requesting that Ruth Rosenberg be held in contempt for refusing to allow visitation as the court had ordered. He also requested that permanent custody be awarded to him.[1] Subsequent hearings disclosed the mother's consistent pattern of refusing to allow visits by the father. In January, 1985, she was found to be in contempt of court and was imprisoned until she subsequently purged herself by agreeing to allow visitation. To facilitate visitation, temporary custody of the girls was awarded to their maternal grandparents, at whose home subsequent supervised visitations

---

1. This petition was filed in the Protection from Abuse action. Subsequent orders regarding permanent custody and visitation, therefore, were entered in the Protection from Abuse proceeding. We disapprove of this procedure. The Protection from Abuse Act was enacted to provide immediate protection from physical abuse; it was not intended to replace other, established proceedings for the determination of permanent custody of children. The right of the court to award *temporary* custody and establish temporary visitation rights with regard to minor children, which has been granted by Section 6(a)(4) of the Act (35 P.S. § 10186(a)(4)), was intended to provide ancillary relief regarding minor children in abuse actions, but was not intended to establish a procedure for determining permanent custody.

took place. Thereafter, the issue of permanent custody was heard and decided.

Appellant supported her objections to the father's visits by accusations that appellee had sexually abused Idra, the younger daughter. Because of these accusations, both daughters were examined by a psychologist and by two psychiatrists. In addition to this expert testimony, the court received testimony from the parties, their daughters (in camera), the parties' rabbi and his wife, the maternal grandmother, and several neighbors.

On May 14, 1985, the hearing court entered an order awarding physical custody of the two girls to their mother and establishing a schedule for unsupervised visitations by the father. The order also provided that "if the Plaintiff-Mother in any manner hinders, hampers, denies and/or violates this Custody Order, physical custody of the minor children shall be transferred to the Defendant-Father."

The trial court found as fact that (1) both parties were fit custodial parents, capable of caring for the children and providing for their physical and emotional needs; (2) both parents were well adjusted and genuinely concerned about their daughters' welfare; (3) the homes of both parents were more than adequate; and (4) the evidence did not support the accusation that the father had sexually abused the younger daughter. The court concluded that either party could adequately parent the children, but determined that the children's best interests would be served by placing primary custody with their mother, who had been the primary caretaker. On appeal, Ruth Rosenberg argues that the hearing court erred in finding that the accusation of sexual abuse had not been proved.

■ The scope of review of an appellate court in custody matters is broad. *Commonwealth ex rel. Robinson v. Robinson*, 505 Pa. 226, 478 A.2d 800 (1984). However, this broad power of review was not

"intended to mean that an appellate court is free to nullify the fact-finding function of the hearing judge. It is a principle which runs through all our cases that the

credibility of witnesses and the weight to be given to their testimony by reason of their character, intelligence, and knowledge of the subject can best be determined by the judge before whom they appear."

*Commonwealth ex rel. Spriggs v. Carson*, 470 Pa. 290, 295, 368 A.2d 635, 637 (1977), quoting *Commonwealth ex rel. Harry v. Eastridge*, 374 Pa. 172, 177, 97 A.2d 350, 353 (1953). "Only where we are constrained to hold that there was a gross abuse of discretion should an appellate court interfere with the decisions of the hearing judge." *Commonwealth ex rel. Robinson v. Robinson, supra*, 505 Pa. at 236–237, 478 A.2d at 806 (emphasis deleted), quoting *Commonwealth ex rel. Spriggs v. Carson, supra*, 470 Pa. at 296, 368 A.2d at 637.

■ There was no abuse of discretion in this case. Idra demonstrated a clear preference for her mother. She testified that she didn't care for her father "because Daddy does things to me.... He touches me in my private places. So I don't think anybody would like that." This was consistent with claims allegedly made to her mother that her father had on occasion fondled her in the vaginal and rectal areas. Dr. Rosenberg steadfastly denied that he had covertly fondled his daughter's private parts. Rebecca said that she had never observed her father fondle her sister in this manner. She also testified that her father had never fondled her in the manner described by her sister. Rebecca apparently had told one of the psychiatrists, however, that her father was overly affectionate and sometimes hugged and kissed her too much. The experts differed in their opinions as to whether Idra's accusations against her father were credible or the result of coaching by her mother. Except for the accusation, however, there was no other or objective evidence that Idra had been fondled in her vaginal and rectal areas. The hearing judge, who saw and heard the witnesses, decided this conflict in favor of appellee. We perceive therein neither error of law nor abuse of discretion.

■ A parent is rarely denied the right to visit a child. "A parent will be denied visitation only in those instances

where the record shows that the parent is severely mentally or morally deficient so as to constitute a grave threat to the child's welfare." *Niadna v. Niadna*, 343 Pa.Super. 298, 302, 494 A.2d 856, 858 (1985). See also: *Somers v. Somers*, 326 Pa.Super. 556, 559, 474 A.2d 630, 631 (1984). The matter of *scheduling* visitation, however, is best left to the discretion of the hearing court. *Nancy E.M. v. Kenneth D.M.*, 316 Pa.Super. 351, 357, 462 A.2d 1386, 1389 (1983); *Scarlett v. Scarlett*, 257 Pa.Super. 468, 473, 390 A.2d 1331, 1334 (1978).

That portion of the hearing court's order which threatened to transfer custody of the children to their father if the mother continued to deny visitation was probably born of exasperation with a recalcitrant litigant. Mrs. Rosenberg has continuously engaged in a course of conduct designed to frustrate Dr. Rosenberg's visits as required by court order. Her frustrating course of conduct was established unequivocally by the evidence.

■ Frequent and willful disobedience of a court order concerning a parent's right of visitation is a factor to be considered in an application for modification of a custody order. Continued and repeated contemptuous behavior which interferes with visitation may constitute a change of circumstances sufficient to support a change in custody. *English v. English*, 322 Pa.Super. 234, 241, 469 A.2d 270, 273 (1983); *Pamela J.K. v. Roger D.J.*, 277 Pa.Super. 579, 593–594, 419 A.2d 1301, 1309 (1980); 24 Am.Jur.2d *Divorce and Separation* §§ 997, 1011 (1983); Annot., 28 A.L.R.4th 9 (1984). Continued interference with court ordered visitation reflects a person's attitude toward law and society and suggests an absence of regard for authority. To deliberately sabotage visitation rights calculated to serve the best interests of children bears adversely on the fitness of the custodial parent, whose conduct most certainly does not go unnoticed by the children.

■ Nevertheless, the normal means of enforcing a partial custody or visitation order is by contempt proceedings. Pa.R.C.P. 1915.12; 24 Am.Jur.2d *Divorce and Sepa-*

*ration* § 997 (1983). See generally: *English v. English, supra.* A custody award should not be used to reward or punish a parent for good or bad behavior. *Id.,* 322 Pa.Super., at 242, 469 A.2d at 273; 24 Am.Jur.2d *Divorce and Separation* § 1011 (1983); Annot., 28 A.L.R.4th 9 (1984). Willful interference with court ordered visitations, no matter how deplorable, cannot be made the basis for an "automatic" change of custody. "[A] change of custody is just as important to the child and to others as an original award of custody, and the parties should be afforded the same type of hearing on the subsequent application as they are entitled to on an original award." 24 Am.Jur.2d *Divorce and Separation* § 1008 (1983). Although it is not clear that the order in this case was intended to be self-executing, i.e., without further hearing, we are of the opinion that the threat implicit therein should be removed from the order. In this way, the regularity of future proceedings will best be preserved.

The visitation order, as modified by removing language which directs a change in custody in the event of a violation of the visitation schedule, is affirmed.