580 A.2d 757

**Leona VALENTINE, Appellant,**

v.

**Anthony WROTEN, Appellee.**

Superior Court of Pennsylvania.

Argued Jan. 10, 1990.

Filed July 17, 1990.

Reargument Denied Oct. 1, 1990.

Margaret Klaw, Philadelphia, for appellant.

Before DEL SOLE, MONTEMURO and TAMILIA, JJ.

DEL SOLE, Judge.

The appellant seeks review of the trial court's refusal to entertain a request for temporary custody of minor children at the time appellant sought a protection from abuse order. The trial court refused appellant's request on February 8, 1989 and appellant filed a petition for reconsideration of that order. The trial court denied reconsideration on April 7, 1989 and appellant filed a notice of appeal following that denial. We find that this appeal has been untimely filed and, therefore, this court does not have jurisdiction. Thus, we quash this appeal.

In this case, following the February 8th order and within thirty days, a notice of appeal and a petition for reconsideration were filed. The trial judge did not within that thirty-day period grant reconsideration. Rather, the trial judge issued a rule to show cause why reconsideration should not be granted. Unfortunately, when this rule was

issued counsel withdrew the pending appeal. The actions of the trial court in this case were not sufficient to invoke the application of Pa.R.A.P. 1701 and, further, as this court has held en banc:

> The granting of a rule to show cause is not a grant of reconsideration and, therefore, did not operate to prevent the thirty-day appeal period from expiring. *Hook v. Athens Area School District,* 50 Pa.Cmwlth.Ct. 420, 413 A.2d 1151, 1153 (1980).

*Luckenbaugh v. Shearer,* 362 Pa.Super. 9, 523 A.2d 399 (1987). Allocatur denied. 518 Pa. 626, 541 A.2d 1138 (1988).

The fact that the trial court established a briefing schedule, hearing date and issuing a rule to show cause did not amount to an agreement to reconsider. Rule 1701 is very clear. Even though an appeal has been filed, a trial court may, within thirty days of the final appealable order expressly grant reconsideration. If the trial court expressly grants reconsideration, it has extended the time for decision. As we said in *Luckenbaugh:*

> A judgment entered in a contested proceeding which ends the litigation must either be appealed within thirty days or the trial court must expressly grant reconsideration within thirty days from the entry of the judgment [order]. Pa.R.A.P. 1701, 42 Pa.C.S.A. See: *Luckenbaugh, id.,* at 523 A.2d 401.

To find that the court does not have jurisdiction is not a harsh technical application of rules, particularly in this case. Here, the appellant has the relief which she sought. Namely, she has custody of her children. She, through amicus, is seeking review of the trial court's order as it would affect future temporary custody matters arising in Protection From Abuse Act cases.

 Our court has repeatedly held that appeals filed from orders denying reconsideration are improper and untimely. *Fortune/Forsythe v. Fortune,* 352 Pa.Super. 547, 508 A.2d 1205 (1986). The appeal in this case should have

been filed within thirty days from the February 7, 1989 order or, reconsideration should have expressly been granted within thirty days of that order. Since the untimely filing of the appeal goes to the jurisdiction of this court, we have no choice but to quash the appeal. *State Farm Mutual Automobile Insurance Co. v. Schultz*, 281 Pa.Super. 212, 421 A.2d 1224 (1980).

Appeal quashed.

TAMILIA, J., files a dissenting opinion.

TAMILIA, Judge, dissenting:

I vigorously dissent to the holding by the majority to quash this appeal as being untimely as it elevates form over substance and trivia over essence. The majority acknowledges the correctness of the dissent as it deals with the issues on the merits, and aside from verbalizing the routine standard for quashing an appeal, fails to respond to the pressing necessity, in justice, to resolve the issues presented by this case, when the technical error was one that was excusable on any basis, either in law or common sense.

This is an appeal from the April 7, 1989 Order of court denying appellant's motion for reconsideration of the court's earlier Order denying appellant temporary custody of her minor children. The facts are as follows. On February 8, 1989, the trial court entered a temporary *ex parte* protection Order under section 10185 of the Protection From Abuse Act, 35 P.S. § 10181 *et seq.* (Act), which enjoined appellee from physically striking, harassing, threatening or using foul language toward appellant and her children and evicted him from appellant's residence. The Order denied appellant's request for temporary custody of her children. At the subsequent hearing on February 24, 1989, the trial court denied appellant's request to amend the temporary Order to include temporary custody of her children and suggested appellant's proper recourse was to petition for an emergency custody Order. That afternoon, appellant received an emergency custody Order. On March

8, 1989, appellant filed a petition for reconsideration of the denial of the temporary *ex parte* custody Order, which the trial court denied on April 7, 1989. Appellant filed a petition to amend the Order to include the language prescribed by 42 Pa.C.S. § 702(b) so as to enable her to appeal the April 7, 1989 Order. On May 1, 1989, appellant and appellee entered into an Order by consent extending the terms of the temporary protection Order through April 30, 1990 and confirming temporary custody in appellant. On May 4, 1989, the trial court denied appellant's petition to amend because it found the issue moot in view of the Order by consent. Appellant now appeals the trial court's April 7, 1989 Order.

Appellant contends the trial court erred in denying her petition for reconsideration. At the time appellant filed her petition for reconsideration, the issue of temporary custody was already moot because the Motions Court had already granted an emergency petition for custody on February 24, 1989 thereby resolving the issue. Further, the issue of temporary custody continues to be moot even now because the parties resolved, through an agreement, both the abuse and protection issue and the temporary custody issue (*See* May 1, 1989 Order by Consent, Tucker, J.). However, this does not resolve the issue for purposes of this appeal. There is a general rule that Superior Court does not consider questions which have been rendered moot by our decisions nor do we consider questions which may not arise upon remand "unless exceptional circumstances exist or questions of great public importance are involved." *Ellis v. Chicago Bridge and Iron Co.*, 376 Pa.Super. 220, 236, n. 16, 545 A.2d 906, 914–15, n. 16 (1988), quoting *Simmons v. St. Clair Memorial Hospital*, 332 Pa.Super. 444, 481 A.2d 870 (1984).

The general rule is that an actual case or controversy must exist at all stages of appellate review. There are, however, exceptions to this mootness doctrine. One such exception is when the question presented is one of great public importance. Another exception is when the question

is capable of repetition yet escaping judicial review. *Roe v. Wade*, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973); *Commonwealth v. Smith*, 336 Pa.Super. 636, 486 A.2d 445 (1984); *Janet D. v. Carros*, 240 Pa.Super. 291, 362 A.2d 1060 (1976). Because this issue is one of great public importance and, as is apparent here, it is capable of frequent repetition yet escaping judicial review, I believe, in light of the above holdings, it is imperative that we review the issue presented on its merits.

Upon reviewing the merits of appellant's petition for reconsideration, I believe there is reason under the facts of this case and the revision in the Act since the time this Court construed it in *Rosenberg v. Rosenberg*, 350 Pa.Super. 268, 504 A.2d 350 (1986), to make a temporary award of custody. The Act was enacted to provide immediate protection from physical abuse and was intended to provide ancillary relief regarding minor children in abuse actions.

The Act, as interpreted correctly by *Rosenberg*, held that section 10186(a)(4) was intended to provide *temporary* custody and to establish temporary visitation rights with regard to minor children. In that case, this Court specifically disapproved of a procedure whereby subsequent orders were entered awarding *permanent* custody and visitation of the children. The most recent revisions of section 10186, *Relief*, subsection (a)(4), have amplified and clarified the extent to which the court in a protection from abuse case can award temporary custody and visitation. This section now provides:

A defendant shall not be granted custody or partial custody where it is alleged in the petition, and the court finds after a hearing ... [he has] abused the ... children ... [custody may not be awarded when he] has been convicted of violating 18 Pa.C.S. § 2904 (relating to interference with custody of children) within two ... years prior to the filing of petition for protection order.... If a [defendant] ... has partial, shared or full custody of the minor children ... by order of court or written agreement of the parties, the custody shall not be dis-

turbed or changed unless the court finds that the defendant is likely to inflict abuse upon the children or to remove the children from the jurisdiction of the court prior to the hearing under section 5(a). Nothing in this paragraph shall bar either party from filing a petition for custody under 23 P.S. Ch. 53 (relating to custody) or under the Pennsylvania Rules of Civil Procedure.

*Id.* (footnote omitted).

The clear intent of this section is to maintain the status quo as to the custody of children unless it is alleged and proven that they are in danger of physical or sexual abuse or may be removed from the jurisdiction prior to a hearing pursuant to a petition alleging abuse. It clearly appears the intent of the statute is to assure that prior orders or agreements as to visitation and custody are honored, except in those instances when a child has been or is in danger of being abused. As with support, pursuant to section 10186(a)(5), which limits temporary support only until a petition for support can be filed (which must be within two weeks of the date of the protective order or the temporary support order becomes void), a temporary custody order can only be entered upon cause shown and may not be extended beyond the time required to obtain a custody order under the custody acts. The trial judge appears to have construed sections 10182, *Definitions,* and 10186, *Relief,* subsection (a)(4), aimed at preventing award of temporary custody to a defendant who has been found to have abused the child, to mean that a *plaintiff* may not be awarded custody unless it is alleged and established that the defendant has been found to have abused the child. This is not correct.

I now turn to consideration of when the trial judge should give serious consideration to a temporary custody petition. Two allegations in the petition could have given rise to a reasonable interpretation that the children were in danger and the court was empowered to enter a temporary custody order, notwithstanding the availability of emergency custody relief pursuant to Pa.R.C.P. 1915.13 *Special Relief.* The trial court, in denying such relief pursuant to the Act, found

it was available under Rule 1915.13, *acknowledged there was good cause to grant the relief* but preferred that it be done pursuant to the custody rules rather than the Act. The trial court stated she did not wish to "put this court in the middle of a custody fight." To hold otherwise might be considered as imposing form over substance as relief would occur expeditiously in either event. However, if a basis for relief is established in the Act, notwithstanding availability of another proceeding, such relief should be forthcoming under the law. The rationale of the trial court that the relief is equivalent does not stand up under careful scrutiny. Without denigrating in any way the effectiveness of the special relief provision of the custody rules, its implementation does not carry with it the rapidity, forcefulness and protection that a temporary order will carry under the Act. The amicus brief points clearly to the extraordinary relief which a protection from abuse order can bring which on balance is not available under an emergency custody order.

Protection from abuse orders can bring into play police protection, while emergency custody orders do not; violation of a protection from abuse order brings into operation criminal contempt actions while emergency custody orders are enforced primarily through civil contempt and a protection from abuse temporary custody order may be issued pro se while emergency custody orders can not. The unusual nature of the indirect criminal contempt penalty for violation of a protective order (section 10190) which provides for imprisonment up to six months or a fine not to exceed $1,000, or both, and arrest upon probable cause, without warrant, whether or not the violation is committed in the presence of the police officer, make it clearly superior to an emergency custody action to protect the wife and children when it is established danger exists. In addition, pursuant to section 10187, a copy of the order may be issued to the police department in the appropriate jurisdiction to enforce the order or agreement, which shall then place it in a county registry of protection orders. The order may also be reg-

istered in other counties pursuant to section 10183.1. Availability of counselled assistance is greater in protection from abuse actions as a matter of public policy and pro bono legal assistance, than in custody actions. Thus it is evident denial of consideration of a petition for temporary custody in a protection from abuse proceeding, because special relief is available in a custody proceeding, is improper as it ignores the special benefits the legislature intended to confer on the victims of domestic violence, not generally available even in emergency custody cases.

Next, I believe we must consider whether there is required to be a showing of physical violence or sexual abuse to the children before an order of temporary custody may issue. While the trial court limited its consideration of allegations and testimony that went solely to the abuse of the children, as defined in subsection 10182(iv), *Definitions*, it appears she ignored the total implications of the section. Under section 10182, "abuse" means the occurrence of one or more of the following acts between family or household members, sexual or intimate partners or persons who share biological parenthood. The section then goes on to list four classes of behavior which, if proven, establish abuse. Once abuse is established under *any* of the distinct categories, then *all* of the relief available under the Act may be called into play by the trial judge.[1] In disregarding the totality of section 10182, I believe the trial judge failed to properly

1. § 10182. Definitions
 As used in this act:
 "Abuse" means the occurrence of one or more of the following acts between family or household members, sexual or intimate partners or persons who share biological parenthood:
 (i) Attempting to cause or intentionally, knowingly or recklessly causing bodily injury, serious bodily injury, rape, spousal sexual assault or involuntary deviate sexual intercourse with or without a deadly weapon.
 (ii) Placing by physical menace another in fear of imminent serious bodily injury.
 (iii) The infliction of false imprisonment pursuant to 18 Pa.C.S. § 2903 (relating to false imprisonment).
 (iv) Physically or sexually abusing minor children as defined in this definition or pursuant to the act of November 26, 1975 (P.L. 438, No. 124), known as the "Child Protective Services Law."

apply section 10186(a)(4), relating to awarding temporary custody of children, to the facts of this case. As explained above, this section was considerably expanded in 1988 over the original wording of the section. It expanded the considerations as to when a defendant should *not* be awarded temporary custody and further provided that *custody orders or agreements should not be disturbed or changed as to either party unless the court finds that the defendant is likely to inflict abuse upon the children or to remove the children from the jurisdiction of the court prior to the hearing.* The legislative intent appeared to be two-fold in providing this amendment. *First,* to assure that adjudicated custody cases or final agreements would not be disturbed by a spurious allegation of abuse and *secondly,* when there was an actual finding of abuse of children or potential abuse or threat of removal of children from the jurisdiction, prior orders or agreements relating to the children would not deny them the protection of the Act. However, the first sentence of section 10186(a), subsection (4), *Awarding temporary custody of and/or establishing temporary visitation rights with regard to minor children,* remains unqualified when "abuse" has been found.[2] In this instance, since no previous orders or agreements were involved, abuse of the mother alone entitled her to consideration of her temporary custody request.

There are undoubtedly numerous situations when the character of harm or threat directed to the mother of the children, comprehend a serious potential for harm to the children even though they have not been physically or sexually harmed themselves. Likewise, one child may have been sexually abused or harmed, while siblings were not. Any test as to children which requires that the specific child

---

2. § 10186. Relief
 (a) The court shall be empowered to grant any protection order or approve any consent agreement to bring about a cessation of abuse of the plaintiff or minor children, which may include:

 . . . . .
 (4) Awarding temporary custody of and/or establishing temporary visitation rights with regard to minor children.

be harmed before a temporary order of custody or visitation can be imposed must fail as it falls short of providing the protection which the Act was designed to effect. Unquestionably, if one child was physically or sexually abused, a trial court would be more than justified in awarding temporary custody of the other children to the other parent. Similarly, if the wife and mother of the children was abused to the extent that the total environment of the children subjects them to danger, it does not appear possible to isolate the children's safety from that of the mother. This may not be an easy decision to make, but the entire tenor of the Act is to err on the side of safety and to intervene to enjoin physical and sexual abuse and advance prevention of physical and sexual abuse. *Commonwealth v. Allen*, 506 Pa. 500, 486 A.2d 363 (1984). In light of the amplification of this section in 1988, it appears reasonable the legislature intended that the status quo as to custody be maintained whether it be from pre-existing custody orders or agreements, or by virtue of who was the primary caretaker of the children, aside from establishing any physical or sexual abuse directly imposed on the children. Once it had been established that the mother had been abused, giving rise to a right to petition under the Act, and incident to that abuse, or as a component of the domestic violence activity giving rise to the petition, notwithstanding a failure to allege child abuse, the mother as primary caretaker could petition for temporary custody and the trial court is empowered to enter an order of temporary custody.

In this case, the children were removed when the father entered the residence and bound and gagged the mother. He also had threatened to remove the children from the jurisdiction. Under these circumstances, the treatment of the mother clearly signaled danger to the children which could only be aborted by immediate intervention of the court and a return of the children to their mother. As discussed above, the court recognized this danger. Even the relief offered by an emergency custody proceeding could not provide the immediacy and legal resources neces-

sary to effective protection of the children. As to the children, the ambient circumstances were such that specific allegations of abuse as to them need not have been established to require their protection by awarding temporary custody to the mother.

In conclusion, I would hold that the trial court need not find specific acts of abuse toward a child to award temporary custody to the mother in the absence of an existing custody order if the allegations of abuse toward her or other children are well grounded and the behavior of the father/husband is such as to call into play the need for protecting the child from the likelihood of harm or removal from the jurisdiction. As stated above, an important consideration is which of the parents has been the primary caretaker or custodian by virtue of a prior custody order.

The majority quashes this appeal as being untimely as the appeal should have been taken from the Order dated February 8, 1989, denying the request for temporary custody. I agree with the majority that technically the February 8th Order could be considered an appealable Order. The appellant in this case also considered it an appealable Order *as she timely filed an appeal from that Order*, along with the motion for reconsideration, on March 8, 1989. However, because of the nature of this case, which was continuing with various motions for reconsideration being considered, and no final Order dispositive of the matter at issue being presented until April 7th, and the final Order on the case as a whole not being entered until May 1, 1989, justice requires that we treat the Order of April 7th as the appealable Order. It appears the appellant followed the rules of appellate procedure in good faith and, through a misunderstanding of the action of Judge Tucker, who issued a rule to show cause on the request for reconsideration rather than issuing an Order granting reconsideration, withdrew her appeal to the Order of February 8, 1989, resulting in the problem stated by the majority. A rundown of the various Orders and petitions is necessary to illustrate the difficul-

ties appellant faced in keeping the appellate clock alive in this respect.

Feb. 8, 1989: Temporary ex parte protection order entered; temporary custody denied.

Feb. 24, 1989: Hearing for final protection order; respondent failed to appear. Forthwith bench warrant issued; case listed for status March 29, 1989. Temporary order continued as issued on Feb. 8, 1989; petitioner's motion to amend to include temporary custody denied.

March 8, 1989: Notice of Appeal filed with the Superior Court. Petition for Reconsideration filed with Judge Tucker. Rule to Show Cause signed by Judge Tucker with hearing date set for March 29, 1989. Petitioner's counsel directed by Judge Tucker to file brief in support of petition by March 20, 1989.

March 20, 1989: Brief in support of petition for reconsideration filed with Judge Tucker. Judge Tucker informed counsel that she did not wish to hear oral argument on March 29, 1989, and would decide the matter on the brief.

March 28, 1989: Praecipe to Strike Appeal filed, pursuant to Pa.R.A.P. 1701(b)(3).

March 29, 1989: Status listing; respondent failed to appear. Second bench warrant issued; case continued to May 1, 1989. Temporary order continued as issued on Feb. 8, 1989.

April 7, 1989: Judge Tucker, without written opinion, issued the following order: "AND NOW, this 7th day of April, 1989, after consideration of Brief in Support of Plaintiff's Application for Reconsideration, it is hereby ORDERED and DECREED that Plaintiff's Motion for Amended Temporary Ex–Parte Order for award of temporary custody of minor children Tiesha Valentine, Tayana Valentine, Stephan Valentine and Cashmere Valentine, pursuant to Section 10185 of the Protection From Abuse Act is DENIED."

April 17, 1989: Respondent brought in on bench warrant. Ordered held for hearing May 1, 1989. Temporary order continued as issued Feb. 8, 1989.

April 24, 1989: Petitioner filed a petition with Judge Tucker asking her to amend her order of April 7, 1989 to include the language prescribed by 42 Pa.C.S. 702(b) so that petitioner could file a petition for permission to appeal the April 7, 1989 order.

May 1, 1989: Hearing for final protection order. Both parties appeared; one year order by consent entered.

May 4, 1989: Judge Tucker, without written opinion, issued an order denying petitioner's application of April 24, 1989.

May 5, 1989: Notice of Appeal from the order of April 7, 1989 filed with the Superior Court.

It is apparent that Judge Tucker, in considering the merits of the petition for reconsideration filed on March 8th, by issuing a rule to show cause and directing counsel to file briefs, led the appellant to believe the requirements of Rule 1701(b)(3) had been met and that she was, therefore, required to withdraw her appeal. Rule 1701 provides in pertinent part:

**(b) Authority of a Trial Court or Agency After Appeal.** After an appeal is taken or review of a quasijudicial order is sought, the trial court or other government unit may:

. . . . .

(3) Grant reconsideration of the order which is the subject of the appeal or petition, if:

(i) an application for reconsideration of the order is filed in the trial court or other government unit within the time provided or prescribed by law; and

(ii) an order expressly granting reconsideration of such prior order is filed in the trial court or other government unit within the time prescribed by these rules for the filing of a notice of appeal or petition for review of a quasijudicial order with respect to such

order, or within any shorter time provided or prescribed by law for the granting of reconsideration.

A timely order granting reconsideration under this paragraph shall render inoperative any such notice of appeal or petition for review of a quasijudicial order theretofore or thereafter filed or docketed with respect to the prior order. *The petitioning party shall and any party may file a praecipe with the prothonotary of any court in which such an inoperative notice or petition is filed or docketed and the prothonotary shall note on the docket that such notice or petition has been stricken under this rule. Where a timely order of reconsideration is entered under this paragraph, the time for filing a notice of appeal or petition for review begins to run anew after the entry of the decision on reconsideration, whether or not that decision amounts to a reaffirmation of the prior determination of the trial court or other government unit.* No additional fees shall be required for the filing of the new notice of appeal or petition for review. (Emphasis added.)

It is unquestionable that appellant, in good faith, followed this procedure and believed that when Judge Tucker agreed to reconsider by issuing a rule to show cause and directing a briefing schedule and hearing date *after an appeal had been taken,* the trial court would be without jurisdiction to review the matter until and unless the appeal was withdrawn. It is significant that appellant had the appeal of the Order of February 8th stricken on March 28th, the day before the time set for the hearing by the trial judge. I believe Rule 1701 requirements were met and the harsh technical application upon which the majority insists denies fundamental justice in this case. This Court has never applied a technical interpretation of a rule to deny fundamental justice when the basic requirements have been met in good faith by the parties. In *Bass v. Commonwealth,* 485 Pa. 256, 401 A.2d 1133 (1979), the Supreme Court held that despite the rigidity of the rule and its interpretation requiring an appeal be filed within 30 days of the Order, it

carved out a narrow and limited exception wherein an attorney, as an officer of the court, is analogous to court officials where breakdown of the court's operation occurs, and at least in those circumstances involving non-negligent failure to file an appeal, members of the public should not lose their day in court.

Here, the requirements of *Bass* were met in that there was no fraud, the attorney, acting in good faith, withdrew the appeal which protected the right of review of the question at issue, on the assumption that Rule 1701 required striking the appeal to permit the trial judge to reconsider the Order of February 8th. By construing the requirements of Rule 1701 to have been essentially met, the status of the case is to extend the time for filing an appeal to the date of the Order on the motion for reconsideration. That Order was filed on April 7, 1989, and I therefore, believe the appeal filed May 5, 1989 was timely. These facts make out a stronger case than *Bass* for excepting to the requirements of Pa.R.A.P. 105(b) *Enlargement of Time*. The extension here was not a matter of indulgence but flows from the apparent action of the trial judge in granting reconsideration, without a specific Order to that effect, with the appellant acting in good faith as though such an Order had been issued. Rule 105(a) *Liberal Construction and Modification of Rules*, states: "These rules shall be liberally construed to serve the just, speedy and inexpensive determination of every matter to which they are applicable." [3]

I believe the appeal of May 5, 1989, is, therefore, timely, and is clearly permitted by a reasonable application of Rules 105 and 1701 to the procedure in this case, as followed in the trial court. To quash under these circumstances, when delay in resolving the important issue presented here will

---

**3.** The Supreme Court has acknowledged the flexibility of the rules when trial courts have taken under advisement or consideration, petitions filed by counsel even after time for filing has passed. *See Commonwealth v. Sheaff*, 365 Pa.Super. 613, 530 A.2d 480 (1987); *see also Commonwealth v. Moore*, 389 Pa.Super. 473, 567 A.2d 701 (1989).

only produce hardship to untold numbers of persons before the law became settled, is unconscionable.

For the above reasons, I would reverse the trial court in her refusal to enter a temporary custody order because the facts of this case clearly would support such a disposition. I would not construe this to mean, as suggested by Amici, that in cases of child retention on visitation or child snatching unrelated to abuse as defined in the act, that a protection from abuse petition can be entertained for the purpose of obtaining a temporary custody order pursuant to the Act. The desirability of such an expansion of the definition of abuse must be left to the legislature, despite recognition that it is a terrible assault on the parent from whom the child is taken, and a cruel if not devastating psychological affront to the child. I do not believe the Act, standing alone, comprehends those matters. With this holding, we could have taken the application of the Protection From Abuse Act to its reasonable limits as I conceive the legislative intent. I would not intend this holding to shortcut custody proceedings or to substitute for the special relief provision of the custody rules. I believe the trial judges of Pennsylvania are fully capable of drawing the line between cases calling for protection and those which attempt to circumvent normal custody proceedings. To prevent the problem footnoted in *Rosenberg, supra,* the trial court could direct, as a part of the temporary order, that one or the other party must initiate a formal custody proceeding before a request is made to extend the temporary Order. As the matter has been resolved in the trial court, I would not disturb the result but reverse the finding of the trial court that the petition for temporary custody be dismissed.