J-S41025-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| N.A.L. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| K.S.L. V. C.E.L. | : | No. 751 MDA 2019 |

Appeal from the Order Entered March 21, 2019
In the Court of Common Pleas of Lebanon County Civil Division at No(s):
2012-20014

BEFORE:   LAZARUS, J., MURRAY, J., and STRASSBURGER*, J.

MEMORANDUM BY MURRAY, J.:                    **FILED SEPTEMBER 04, 2019**

N.A.L. (Father) appeals *pro se* from the order denying his petition to modify custody with respect to his minor son, R.M.L. (Child), without a hearing.  After careful review, we vacate and remand for further proceedings consistent with this memorandum.

The record reveals that Father and K.S.L. (Mother) are the parents of Child, born January 2011.  Complaint in Custody, 1/11/12, at ¶ 3.  Father and Mother married in April 2011.  Complaint in Divorce, 1/6/12, at ¶ 4.  In January 2012, Father initiated this action by filing a complaint in custody and a complaint in divorce.  In February 2012, the parties entered into a consent custody order providing shared legal and physical custody of Child.  Order, 2/17/12, at ¶ 3.

On June 24, 2013, Mother filed a petition for emergency custody. Mother alleged that Father, in an effort to gain custody of Child, "planted"

_____
* Retired Senior Judge assigned to the Superior Court.

drugs in Mother's vehicle while she took Child to a doctor's appointment. Petition for Emergency Custody at ¶¶ 9-11. Accordingly, Father was charged and convicted of numerous crimes.[1] *Id.* at ¶ 6. As a result of Mother's petition, the court awarded Mother sole legal and physical custody of Child. Order, 6/25/13.

Thereafter, the parties continued to litigate custody. On September 4, 2015, C.E.L. (Paternal Grandmother) filed a complaint for custody. In October 2015, the parties reached a custody agreement whereby Mother received sole legal and primary physical custody of Child; Father was permitted partial physical custody as he and Mother reasonably agreed upon his release from prison; Father was permitted to communicate with Child and participate in the prison Reading to Your Children Program;[2] and Paternal Grandmother was permitted two days of physical custody per month. Order of Custody, 10/29/15. In April 2017, Paternal Grandmother filed a petition for modification of custody. In January 2018, the parties reached another

---

[1] The charges included violations of the controlled substance, drug, device and cosmetic act; criminal use of a communication facility; criminal coercion; false reports to law enforcement authorities; tampering with or fabricating physical evidence; retaliation against a witness, victim or party; obstructing administration of law or other governmental function; and unsworn falsification to authorities. *See* Trial Court Opinion, 5/28/19, at 2. A jury convicted Father on all counts, and Father received a sentence of 6½ to 15 years imprisonment. *Id.*

[2] This program permits inmates to have a DVD made of the inmate reading a book so the DVD can be mailed to their child. Order, 9/22/17, at 2.

agreement regarding custody which slightly modified the prior order. Order, 1/16/18.

On July 9, 2018, Paternal Grandmother filed another petition for modification of custody. On January 22, 2019, following a hearing, the trial court entered a custody order awarding Mother sole legal and primary physical custody of Child. Order, 1/22/19. Father was not awarded any physical custody; however, the order permitted Father to participate in the Reading to Your Children Program, to communicate with Mother regarding Child, and to communicate with Child by telephone, email, or letter. *Id.* Further, Paternal Grandmother was granted periods of partial physical custody for one weekend per month, two partial weeks of vacation per year, and holiday visits. *Id.*

On February 15, 2019, Father filed a petition for modification, requesting that Child visit Father while Father is incarcerated. On February 21, 2019, the court denied Father's petition without a hearing. Father then filed another petition on March 15, 2019, in which he sought modification of custody and visits with Child. By order dated March 21, 2019, the court denied Father's petition without a hearing. On April 19, 2019, Father timely filed this notice of appeal by placing it in the prison mailbox.[3] Father did not

---

[3] *See Thomas v. Elash*, 781 A.2d 170, 176 (Pa. Super. 2001) (holding that "a legal document is deemed filed by an incarcerated litigant, proceeding *pro se,* on the date it is delivered to the proper prison authority or deposited in the prison mailbox.").

contemporaneously file a concise statement of errors complained of on appeal. By order dated April 24, 2019, the trial court ordered Father to file his statement of errors complained of on appeal within 21 days. Father timely complied.[4]

Father raises the following issues for our review:[5]

1. Would the allowing of visitation between minor child and Father, while [F]ather is incarcerated, be in the best interest of the minor child?

2. Did the trial court violate Father's right to due process by failing to hold a hearing to determine the best interest of the minor child?

3. Did the trial court allow bias to interfere with due process by refusing to consider visitation of a minor child to Father in prison?

4. Did the trial court allow bias as sentencing judge of Father in [his] criminal case to prevent due process in [the] custody proceeding?

Father's Brief at 3.

At the outset, and consistent with the Child Custody Act, (Act), 23 Pa.C.S.A. §§ 5321-5340, we note:

> In reviewing a custody order, our scope is of the broadest type and our standard is abuse of discretion. We must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility

---

[4] We are aware of no prejudice arising from Father's failure to file concurrently the concise statement with the notice of appeal. Therefore, we will not quash or dismiss Father's appeal. *See In re K.T.E.L.*, 983 A.2d 745 (Pa. Super. 2009); *Cf. J.P. v. S.P.*, 991 A.2d 904, 908 (Pa. Super. 2010) (holding that appellant waived all issues by failing to file a concise statement of errors complained of on appeal when directed by the trial court).

[5] Neither Mother nor Paternal Grandmother have participated in this appeal.

and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

***C.R.F. v. S.E.F.***, 45 A.3d 441, 443 (Pa. Super. 2012) (citation omitted).

The primary concern in any custody case is the best interests of the child. "The best-interests standard, decided on a case-by-case basis, considers all factors that legitimately have an effect upon the child's physical, intellectual, moral, and spiritual wellbeing." ***Saintz v. Rinker***, 902 A.2d 509, 512 (Pa. Super. 2006) (citing ***Arnold v. Arnold***, 847 A.2d 674, 677 (Pa. Super. 2004)).

The Act enumerates the following types of custody awards that a court may order:

**(a) *Types of award.* —** After considering the factors set forth in section 5328 (relating to factors to consider when awarding custody), the court may award any of the following types of custody if it is in the best interest of the child:

**(1)** Shared physical custody.

**(2)** Primary physical custody.

**(3)** Partial physical custody.

**(4)** Sole physical custody.

**(5)** Supervised physical custody.

**(6)** Shared legal custody.

**(7)** Sole legal custody.

23 Pa.C.S.A. § 5323(a).

Instantly, we deem Father's request in the petition for modification as a request for "supervised physical custody," which is defined in the Act as "Custodial time during which an agency or an adult designated by the court or agreed upon by the parties monitors the interaction between the child and the individual with those rights." 23 Pa.C.S.A. § 5322; **see also S.T. v. R.W.**, 192 A.3d 1155, 1165 (Pa. Super. 2018) (stating, "incarcerated parents who seek some form of contact with their children - whether it be a request that the children visit them or otherwise - are seeking an award of 'supervised physical custody' as defined under § 5323.").

Accordingly, the trial court was required to consider the following enumerated list of factors in determining Child's best interests related to Father's request for supervised physical custody at SCI–Camp Hill:

**§ 5328. Factors to consider when awarding custody.**

**(a) Factors.** – In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety of the child, including the following:

(1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.

(2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.

(2.1) The information set forth in section 5329.1(a)(1) and (2) (relating to consideration of child abuse and involvement with protective services).

(3) The parental duties performed by each party on behalf of the child.

(4) The need for stability and continuity in the child's education, family life and community life.

(5) The availability of extended family.

(6) The child's sibling relationships.

(7) The well-reasoned preference of the child, based on the child's maturity and judgment.

(8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

23 Pa.C.S.A. § 5328(a).

This Court has stated, "**[a]ll** of the factors listed in [§] 5328(a) are required to be considered by the trial court when entering a custody order." **J.R.M. v. J.E.A.**, 33 A.3d 647, 652 (Pa. Super. 2011) (emphasis in original).

In deciding custody cases where the parent is incarcerated, this Court has stated that the factors set forth in **Etter v. Rose**, 684 A.2d 1092 (Pa. Super. 1996) — which was decided prior to the effective date of the Act — "are now assimilated into [the] § 5328(a) analysis under § 5328(a)(16)." **S.T. v. R.W.**, 192 A.3d at 1167 (citations omitted). The factors include:

(1)  age of the child;

(2)  distance and hardship to the child in traveling to the visitation site;

(3)  the type of supervision at the visit;

(4)  identification of the person(s) transporting the child and by what means;

(5)  the effect on the child both physically and emotionally;

(6)  whether the parent has and does exhibit a genuine interest in the child; and

(7)  whether reasonable contacts were maintained in the past.

**M.G. v. L.D.**, 155 A.3d 1083, 1094 (Pa. Super. 2017) (quoting **D.R.C. v. J.A.Z.**, 31 A. 3d 677, 687 (Pa. 2011)). In addition, we recognized that the

***D.R.C.*** provided another relevant consideration not included in ***Etter***, that is, "the nature of the criminal conduct that culminated in the parent's incarceration, regardless of whether that incarceration is the result of a crime enumerated in section 5303(b)."[6]  ***M.G.***, 155 A.3d at 1094 (quoting ***D.R.C.***, 31 A.3d at 686).

Because we conclude that it is dispositive, we first address Father's assertion that the trial court erred in denying his petition for modification without holding a hearing.  Father's Brief at 7-8.  Father contends that by failing to conduct a hearing, the trial court violated his due process rights and entered an order that is inconsistent with Child's best interests.  ***Id.***

Generally, "petitions for modification of custody orders may be entertained at any time without regard to whether there have been any material changes which would warrant a reevaluation."  ***Martin v. Martin***, 562 A.2d 1389, 1390 (Pa. Super. 1989) (citation omitted).  Our Supreme Court has provided "a directive that petitions for modification of custody

---

[6] In ***M.G.***, we explained that our Supreme Court in ***D.R.C.*** interpreted Section 5303, which was repealed and then reenacted as Section 5329 of the Act.  We continued, "However, since § 5329 is materially indistinguishable from its predecessor, we follow the guidance that our High Court provided in addressing prison visitations in ***D.R.C.***"  ***M.G.***, 155 A.3d at 1094.

We observe that Section 5329 relates to consideration of a criminal conviction by a party or member of the party's household who is seeking any form of custody based on an enumerated list of crimes.  The provision directs the trial court to determine whether the party poses a threat of harm to the child prior to entering a custody order.

orders may be filed at any time, and in all such cases the court hearing the petition must consider the best interests of the child or children." *Id.* at 1391. Further, "[a] change in custody is just as important to the child and to others as an original award of custody, and the parties should be afforded the same type of hearing on the subsequent application as they are entitled to on an original award." *Clapper v. Harvey*, 716 A.2d 1271, 1275 (Pa. Super. 1998) (*quoting* *Rosenberg v. Rosenberg*, 504 A.2d 350, 353 (Pa. Super. 1986)).

> Moreover:
>
> Due process mandates that an incarcerated parent have a meaningful opportunity to expose *all* the relevant factors in a custody analysis. Under the revised Custody Law, incarcerated parents do not need to make a *prima facie* showing that contact with the child is feasible based on those custody factors relating to logistics. Parties cannot fully address all the relevant factors if trial courts preliminarily disqualify them on certain factors before a hearing even occurs. Additionally, parties cannot expose all the relevant factors if they cannot advocate for themselves in real time, i.e., cross-examine witnesses of the other party and respond to arguments.

*S.T. v. R.W.*, 192 A.3d 1155, 1164 (Pa. Super. 2018) (emphasis in the original).

In denying Father's petition for modification, the trial court noted that it presided over a custody trial on January 10, 2019, issued a custody order on January 22, 2019, and "absolutely nothing has changed since. . . ." Trial Court Opinion, 5/28/19, at 3, 9. The court acknowledged that Father's petition requested face-to-face physical custody with Child and denied Father's request as "obviously ridiculous." *Id.* at 3-4. The court explained that it denied

- 10 -

Father's petition because Father is a state-sentenced prisoner, and that such locations have a high level of security. *Id.* at 6. The court also expressed concern that prisoners would use custody litigation to harass non-incarcerated parents. *Id.* at 7. The court concluded it would be "a grave mistake to afford [s]tate-[s]entenced prisoners with a common law 'right' to seek face-to-face contact." *Id.* Further, the court observed that because Father's crime was directed at Mother, and Mother and Child were the victims of the crime, the Department of Corrections will not permit the visits. *Id.* at 9-10.

Upon review of prevailing legal authority, we conclude that the trial court erred in denying Father's petition for modification without a hearing and without examining the Section 5328(a) custody best interest factors, including the additional factors applicable to incarcerated parents. We stress that our decision does not mean that the trial court must award Father supervised physical custody, or any type of custody for that matter. We conclude only that the court cannot make its custody determination without first providing Father an opportunity for a hearing, and by rendering a decision after consideration of the best interest factors. Therefore, we vacate the order dismissing Father's petition for modification of custody.[7]

Order vacated. Case remanded for further proceedings consistent with this memorandum. Jurisdiction relinquished.

---

[7] Because of this disposition, we do not address Father's remaining issues.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/4/2019