J-S38019-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| CHRISTOPHER JOHN SHROPSHIRE | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JENNIFER REA SHROPSHIRE | : | No. 1156 WDA 2021 |

Appeal from the Order Entered September 3, 2021
In the Court of Common Pleas of Clarion County Civil Division at No(s):
189 CD 2017

BEFORE:   BENDER, P.J.E., DUBOW, J., and COLINS, J.

MEMORANDUM BY DUBOW, J.:                    **FILED: MARCH 9, 2022**

Appellant, Christopher John Shropshire ("Father"), appeals from the September 3, 2021 Order, which granted the Petition for Modification filed by Appellee, Jennifer Rea Shropshire ("Mother"), and awarded Mother sole legal and physical custody of then-seven-year-old C.M.S. ("Child"), the parties' only child.  Upon review, we affirm.

**FACTUAL AND PROCEDURAL HISTORY**

Mother and Father have known each other for approximately twenty-five years and were married for eleven years prior to their separation in August 2015.  On February 27, 2017, the parties entered a Consent Order that awarded them joint legal custody, Mother primary physical custody, and

_____

Retired Senior Judge assigned to the Superior Court.

Father partial physical custody of Child for two overnight visits per week, on varying days of the week depending on Father's schedule.

Father has a history of mental health issues, and his diagnoses include bipolar disorder, post-traumatic stress disorder ("PTSD"), and anxiety. Throughout their relationship, Mother has been concerned about Father's mental health and impulsive behavior.[1]

In March 2020, at the start of the COVID-19 pandemic, the parties informally agreed that Child would stay with Mother and cease overnight visits with Father. In April 2020, the parties agreed to meet in the parking lot of a Dunkin Donuts on two occasions for Father to see Child briefly. On both occasions, Mother observed that Father looked unwell, and Father indicated that he was spending a lot of time in the woods and not sleeping. On the second occasion, Father began to recount to then-six-year-old-Child that he experienced sexual abuse as a child until Mother informed him that it was an inappropriate time and place for the conversation.

---

[1] For example, Mother testified that: (1) in 2004, Father threatened to shoot Mother with a shotgun if she did not tell him details of kissing another man while they were broken up; (2) in 2011, at thirty-one years old, Father announced he was joining the military to become an Army Ranger, despite owning a successful business; (3) in 2013 or 2014, Father devised a plan to move to Brazil, which lacked an extradition treaty with the United States, to hide from the army; (4) during Mother's pregnancy, Father constantly talked about killing himself; (5) in 2016, Father took a gun to the woods for twenty-four hours, Father called Mother and threatened to kill himself, and Mother took him to a hospital where a therapist de-escalated the situation; and (6) Father impulsively purchased cars, and owned approximately thirty-three different cars in a thirteen year time period. N.T. Hearing, 9/2/21, at 92-94, 136.

At the end of April 2020, Father spontaneously drove across country to California and back in a six-day period. Father called Mother frequently from his road trip, and each time his speech was rapid and disjointed. Father sent Child several videos where he, likewise, was talking quickly and not making sense. The videos and phone calls suggested to Mother that Father was not sleeping during the road trip.

Mother relayed concerns about Father to Father's mother and sister, who had their own concerns about Father's mental health status. Father's sister applied for involuntary emergency examination and treatment of Father under Section 302 of the Mental Health Procedures Act, resulting in the issuance of a warrant ("Section 302 warrant"). Police in Wyoming located and detained Father pursuant to the Section 302 warrant issued in Pennsylvania. Upon his release, Father returned to Pennsylvania and proceeded to the recommended hospital for evaluation and treatment. Father spent six days in inpatient mental health treatment at the Veterans Affairs ("VA") hospital,[2] signed releases for Mother to get information, and spoke to Mother frequently on the telephone telling her that she was the only person he could count on.

On the day that Father was released from the VA hospital, Mother called Father to check on him and he told Mother that she was no longer his friend. During a video call with Child, Father informed Child that he was changing his name to Prince Maximus Prime, which was the name of Child's dog, and told

_____

[2] Father was honorably discharged from the United States military in 2016.

Child that he was going to take her on a vacation, even though there were multiple travel restrictions in place due to the COVID-19 pandemic. Over the next few days, Father sent Mother aggressive text messages and cursed at Mother during video chats with Child.

On May 19, 2020, Mother filed an Emergency Petition for Special Relief requesting that the court award her sole legal and physical custody of Child. On the same day, Mother filed a Petition for Modification of the Custody Order. On May 20, 2020, the trial court awarded Mother sole physical custody pending an emergency hearing. On July 1, 2020, the trial court conducted a hearing on Mother's emergency petition and subsequently ordered Father's visits with Child to be supervised by Community County Services. The trial court also ordered both parties to submit proposals for individuals to perform psychiatric and child custody evaluations and ordered Father to participate in the evaluations once the court appointed an evaluator.

On July 27, 2020, the trial court appointed Bruce Chambers, Ph.D., a licensed psychologist, to serve as the custody evaluator.

On September 2, 2021, after unsuccessful conciliation and mediation conferences, the trial court held a hearing on Mother's modification petition. The trial court heard testimony from Dr. Chambers, Mother, Father's sister Alicia Shropshire ("Ms. Shropshire"), and Father. We summarize the relevant evidence as follows.

Mother testified consistently with the above-stated facts. Additionally, Mother explained that she wants Father to be in Child's life, but she is afraid

that he will abscond with Child or put Child in danger if his mental health is left untreated.

Dr. Chambers testified as an expert in the field of clinical psychology with a specialty in conducting child custody evaluations. In conducting the custody evaluation, he spoke with both parents, observed the child interacting with both parents, administered the Minnesota Multiphasic Personality Inventory ("MMPI") to both parents, and spoke with Father's sister. Although he requested all of Father's mental health records dating back to 2016, he received incomplete and random records from Father without page numbers.

Dr. Chambers explained that when Father was admitted to the hospital in May 2020, his admitting diagnosis was bipolar disorder, current episode manic, and PTSD. Dr. Chambers stated that at that time, Father displayed a decreased need for sleep, racing thoughts, disorganized thought processes, impulsive behavior, and grandiosity, which Dr. Chambers explained were classic symptoms of bipolar manic episodes. Dr. Chambers testified that the hospital records indicated that Father was prescribed the antipsychotic medication Haldol while in the hospital, which is consistent with a psychotic disorder due to bipolar disorder.

Dr. Chambers testified that Father's MMPI results suggested a likelihood of impulsivity, poor judgment, acting out behavior, depression, anxiety, memory problems, concentration problems and difficulty making decisions, which could impact his parenting. Dr. Chambers further testified that Mother's MMPI results suggested an absence of psychopathology.

Dr. Chambers testified that his observations of Child with Mother and Father were both positive, and it was clear that Child had a bond with both parents.

Dr. Chambers concluded that Father has a very serious mental health illness, namely bipolar disorder, and has been non-compliant with treatment, despite the fact that "[F]ather's condition would be highly amenable to medication[,]" which can minimize and stabilize symptoms. N.T. Hearing, 9/2/21, at 28. Dr. Chambers explained that bipolar disorder does not resolve on its own and medication is the only way to control it.

Dr. Chambers recommended that Father's visitation remain supervised until Father complies with treatment and regular blood tests to ensure he is taking his medication as prescribed. Dr. Chambers testified that if Father complied with treatment for six months, unsupervised contact with Child could be appropriate.

Ms. Shropshire testified that Father stayed with her and their mother for approximately a week and a half in the days leading up to Father's trip to California. At the time, Father had just broken up with his girlfriend, was homeless, and was unemployed. She explained that Father was argumentative, cycling through emotions ranging from manic to tearful, and physically aggressive. Ms. Shropshire explained that Father brought a handgun and AR-15 with him to the home. She testified that after one argument, Father returned to the room with his handgun on his hip and threatened several times to kill her. Ms. Shropshire confirmed that she is the

one who applied for a Section 302 warrant while Father was traveling to and from California.

Father testified that he has lived in a house in Indiana, Pennsylvania, with a bedroom set up for Child since May 2020. Father testified that he graduated from truck-driving school in May 2021, and shortly thereafter began employment as an over-the-road truck driver who drives to California and back.

Father confirmed that he had daily arguments with his mother and sister while staying in their home in April 2020 but denied threatening to kill his sister. Father testified that during that time, he spent most of the time in the woods and would always take a handgun with him. Father explained that he had a concealed carry permit since 2001 and occasionally works as a shooting instructor.

Father testified that he did not intend to drive to California, and just started driving west to get away from his mother and sister. Father explained he ended up in California because he "rain out of road, basically, and hit the ocean because I just – didn't know what else to do." *Id.* at 167. Father stated that he slept in his car in different states throughout the trip and was sleeping in his car when Wyoming police approached him with the Section 302 warrant.

Father testified that after he was briefly detained by Wyoming police, he voluntarily drove back to Pennsylvania and entered the hospital for mental health treatment. Father testified that hospital staff prescribed him Seroquel for anxiety, a medication that he had previously been prescribed, which he

stopped taking a month later in June 2020. Father denied being prescribed any additional medications.

Father testified that he is engaged in ongoing outpatient mental health treatment. Father stated that he sees a counselor named Gale Shay from VA DuBois for an hour every couple of weeks as needed. Father also testified that he sees a psychiatrist named Dr. Barahona from the VA who did not prescribe him any medications. Father confirmed that he is diagnosed with bipolar disorder, PTSD, and depression. Father denied that he has any active prescriptions for medication.

On September 3, 2021, the trial court filed an Opinion and Order of Court ("Opinion") that analyzed the 23 Pa.C.S. § 5328(a) custody factors to determine what disposition was in Child's best interest. The trial court simultaneously entered an order that granted Mother's modification petition, awarded Mother sole legal and physical custody of Child, and ordered that the only physical and verbal contact that Father could have with Child was supervised visitation provided by Community County Services. The court further ordered that Father may "petition for reevaluation by Bruce Chambers, Ph.D.[,] if he agrees to provide complete information to Dr. Chambers . . . including any records from his psychiatrist showing that he does not need medication." Order, 9/3/21.

Father timely appealed and filed a contemporaneous Pa.R.A.P. 1925(b) Statement pursuant to Rule 1925(a)(2)(i). The trial court relied on its September 3, 2021 Opinion in lieu of a Rule 1925(a) Opinion.

**ISSUE RAISED ON APPEAL**

Father raises one issue for our review: "Did the [t]rial [c]ourt abuse its discretion by granting Mother sole legal and physical custody of [Child]?" Father's Br. at 5.[3]

**LEGAL ANALYSIS**

This court reviews a custody determination for an abuse of discretion, and our scope of review is broad. *S.W.D. v. S.A.R.*, 96 A.3d 396, 400 (Pa. Super. 2014). This court will not find an abuse of discretion "merely because a reviewing court would have reached a different conclusion." *In re K.D.*, 144 A.3d 145, 151 (Pa. Super 2016). This Court must accept the findings of the trial court that the evidence supports. *Id*. Importantly, "[o]n issues of credibility and weight of the evidence, we defer to the findings of the trial judge who has had the opportunity to observe the proceedings and demeanor of the witnesses." *K.T. v. L.S.*, 118 A.3d 1136, 1159 (Pa. Super. 2015) (citation omitted). We can interfere only where the "custody order is manifestly unreasonable as shown by the evidence of record." *Saintz v. Rinker*, 902 A.2d 509, 512 (Pa. Super. 2006) (citation omitted).

---

[3] Appellant has raised only one question for review, but he has included argument in his Brief pertaining to numerous issues raised only in his Rule 1925(b) Statement. Appellant's failure to "state concisely the issues to be resolved" in his Statement of Questions Involved and his failure to divide his argument "into as many parts as there are questions to be argued" in his Argument section violates Pa.R.A.P. 2116 and 2119(a), respectively, and hampers this court's ability to review certain arguments. Notwithstanding these defects, to the extent that we can discern Appellant's issues, we will address them.

The Child Custody Act, 23 Pa.C.S. §§ 5321–5320, governs all custody proceedings commenced after January 24, 2011. *E.D. v. M.P.*, 33 A.3d 73, 77 (Pa. Super. 2011). The Custody Act requires a trial court to consider all of the Section 5328(a) custody factors when "ordering any form of custody," and further requires the court to give "weighted consideration to those factors which affect the safety of the child[.]" 23 Pa.C.S. § 5328(a). A trial court must "delineate the reasons for its decision when making an award of custody either on the record or in a written opinion." *S.W.D.*, 96 A.3d at 401. *See also* 23 Pa.C.S. § 5323(a) and (d). However, "there is no required amount of detail for the trial court's explanation; all that is required is that the enumerated factors are considered and that the custody decision is based on those considerations." *M.J.M. v. M.L.G.*, 63 A.3d 331, 336 (Pa. Super. 2013).

When reviewing child custody matters and the trial court's consideration of the Section 5328(a) custody factors, our paramount concern is the best interests of the child. *See Saintz*, 902 A.2d at 512 (explaining that this Court's "paramount concern and the polestar of our analysis" in custody cases is the best interests of the child). "The best-interests standard, decided on a case-by-case basis, considers all factors which legitimately have an effect upon the child's physical, intellectual, moral, and spiritual well-being." *D.K.D. v. A.L.C.*, 141 A.3d 566, 572 (Pa. Super. 2016) (citations omitted).

Father avers generally that the trial court abused its discretion by granting Mother sole legal and physical custody of Child. Father's Br. at 5.

- 10 -

Father specifically argues that the trial court abused its discretion when it ordered all of his visitation to be supervised and denied telephone contact with Child. *Id.* at 16-26. Father contends that Mother failed to present evidence that he ever placed Child in danger or that his mental illness compromises his ability to perform parental duties and keep Child safe. *Id.* at 16-26. Father further argues that the trial court abused its discretion when it awarded Mother sole legal custody of Child because Mother did not demonstrate that Father is unable to make medical or educational decisions for Child. *Id.* at 14-16. Finally, Father asserts that the evidence does not support the trial court's finding that Mother is available to care for the Child pursuant to Section 5328(a)(12). *Id.* at 27.

**Supervised Partial Custody**

Father's main argument is that the trial court abused its discretion when it limited Father's contact with Child because Mother failed to demonstrate that Father has ever placed Child in danger. Father cites ***Rosenberg v. Rosenberg***, 504 A.2d 350 (Pa. Super. 1986), to support his assertion that a trial court should deny visitation "only in those instances where the record shows that the parent is severely mentally or morally deficient so as to constitute a grave threat to the child's welfare[,]" and that Mother failed to prove that Father was a "grave threat" to child. Appellant's Br. at 18 (citing ***Rosenberg***, 504 A.2d at 272-73). Father further argues that evidence of Father's past conduct is irrelevant, and the trial court should focus on Father's

present conduct, which does not pose a safety risk to Child. ***Id.*** at 16-17, 21-22. Father's argument fails for numerous reasons.

First, the legal standard set forth in ***Rosenberg*** pre-dates the Custody Act, which now requires a trial court to consider all of the Section 5328(a) custody factors when "ordering any form of custody," and further requires the court to give "weighted consideration to those factors which affect the safety of the child" to determine a custody arrangement that is in Child's best interest. 23 Pa.C.S. § 5328(a). Secondly, as explained below, contrary to Father's argument that the trial court relied on evidence of his past conduct, in its Opinion, the trial court emphasized that Father's present conduct of noncompliance with mental health treatment posed a safety risk to Child. ***See*** Trial Ct. Op., dated 9/3/21, at 1.

In its Opinion, the trial court considered and analyzed the Section 5328(a) custody factors and found seven factors to favor Mother, three factors to be neutral, seven factors to be inapplicable, and no factors to favor Father. ***Id.*** at 2-6 (unpaginated). In considering the factors, the trial court's primary concern was the safety of the Child. The trial court opined:

> The court finds that father has as a serious mental illness, Bipolar Disorder, which is untreated as a result of [F]ather's refusal to take medication that has been prescribed and the untreated condition potentially compromises [F]ather's ability to perform parental duties and to keep [C]hild safe if he should have unsupervised custody. Therefore, the current Order of July 1, 2020 requiring supervision will not be changed.

***Id.*** at 1.

- 12 -

In arriving at this decision, the trial court credited the testimony of the sole expert witness, Dr. Chambers, who testified that Father's untreated mental illness could affect Father's ability to parent and recommended that Father should only have supervised contact with Child until Father complies with advised treatment. Further, the trial court found Father's testimony that he does not need psychiatric medication to be unreliable. The trial court opined:

> [T]he court has considered [F]ather's testimony that he was not prescribed medicine for Bipolar Disorder at the [VA] Hospital and his own psychiatrist believes he does not need medicine for that condition. The court finds that the testimony is hearsay evidence and is, therefore, unreliable. Father could have retained an expert who was able to testify in court. Further, [F]ather's testimony that he did not have symptoms of Bipolar Disorder in the past is unpersuasive because the evidence clearly shows he did. Finally, despite [F]ather having petitioned the court for a psychological evaluation by Bruce Chambers, Ph.D., and the court having directed the parties by the Order of July 27, 2021 to participate in an evaluation by Dr. Chambers, [F]ather failed to provide complete information to Dr. Chambers about his treatment through the [VA], including any records from his psychiatrist showing that he does not need medication. Since Father deprived Dr. Chambers of the ability to consider all possibly relevant information, he cannot now complain that Dr. Chambers reached the wrong conclusion.

Trial Ct. Op. at 2 (unpaginated). The record supports the trial courts findings, and we decline to usurp the trial court's credibility determinations or reweigh the evidence. Accordingly, we discern no abuse of discretion.

**Legal Custody**

Appellant next avers that the trial court abused its discretion when it awarded Mother sole legal custody. Father's Br. at 14-16. Father argues that

- 13 -

there is no evidence in the record to demonstrate that he is unable to make major decisions for Child, including medical or educational decisions, or that Father's decisions would harm Child. *Id.* However, Father fails to cite any relevant caselaw to support his position or enunciate the correct legal standard for determining legal custody. Moreover, Father fails to articulate how the evidence, or lack of evidence, resulted in trial court error. Without more, Father's argument fails.

Once again, the Custody Act requires a trial court to consider all of the Section 5328(a) custody factors when "ordering any form of custody," including legal custody, to determine what custody disposition is in Child's best interest. 23 Pa.C.S. § 5328(a). As discussed above, the trial court considered all of the custody factors to determine the custody disposition that is in Child's best interest and the record supports the trial court's findings. Accordingly, we find no abuse of discretion.

**Section 5328(a)(12) – Each Party's Availability to Care for the Child or Make Appropriate Child Care Arrangements**

Finally, Father makes the nonsensical argument that the trial court's finding that "Mother's available" to care for Child pursuant to Section 5328(a)(12) is unsupported by the evidence. *See* Father's Br. at 27 (citing Trial Ct. Op. at 5). Father asserts that Mother presented "absolutely no evidence . . . concerning [M]other's availability to care for [C]hild." *Id.*

Our review of the record belies Father's claim. Mother had primary physical custody of Child for over three years prior to filing her modification

petition. Moreover, Mother testified that she had physical custody of Child for five overnights per week prior to the COVID-19 pandemic, and then full time from the start of the COVID-19 pandemic to present. Certainly, this is sufficient evidence to support the trial court's finding that Mother is available to care for Child. Father's argument lacks merit, and we find no abuse of discretion.

**CONCLUSION**

In conclusion, the trial court did not abuse its discretion when it granted Mother's petition to modify custody, awarded Mother primary legal and physical custody, and limited Father to supervised visits with Child until he demonstrates compliance with recommended mental health treatment.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/9/2022