J-A19013-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| TENA M. FRIERSON | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| RANDALE L. LOVE | : | No. 538 MDA 2022 |

Appeal from the Orders Entered March 8, 2022
In the Court of Common Pleas of Dauphin County Civil Division at No(s):
2020 CV 11245 CU

BEFORE:   BOWES, J., KING, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY BOWES, J.:                **FILED: NOVEMBER 8, 2022**

Tena M. Frierson ("Mother"), *pro se*, appeals the orders entered on March 8, 2022, wherein the court disposed of competing petitions for contempt between Mother and Randale Love ("Father") with respect to their son, R.L., born in July of 2020, and awarded Father sole legal and physical custody of the child.[1]  We affirm.

---

[*] Former Justice specially assigned to the Superior Court.

[1]  Mother timely filed a single notice of appeal from two orders entered on March 8, 2022.  While the notice of appeal did not identify the substance of either order, Mother attached both orders to the notice, which this Court docketed as a single appeal at 538 MDA 2022.  Although Mother's conjoined appeal presents a procedural anomaly, that is not a basis to quash it in light of Pa.R.A.P. 902, which provides, "Failure of an appellant to take any step other than the timely filing of a notice of appeal does not affect the validity of the appeal, but it is subject to such action as the appellate court deems appropriate[.]"  **See e.g.**, **Commonwealth v. Young**, 265 A.3d 462, 477 (Pa. 2021)("[W]here a timely appeal is erroneously filed . . ., Rule 902 permits

*(Footnote Continued Next Page)*

Mother initiated the underlying custody action *pro se* on November 12, 2020, and, prolonged by Mother's conduct and litigiousness, the following tortuous procedural history ensued.[2] During the initial custody conciliation conference, the parties stipulated to a custody order that awarded Mother primary physical custody, granted Father periods of partial physical custody, and established shared legal custody. Approximately six days later, Mother filed a petition to modify that order. In separate *pro se* filings on March 24, 2021, and April 12, 2021, Mother issued notice of her proposed relocation to Valdosta, Georgia. The certified record does not indicate whether Father was served with either notice, and no counter-affidavit was forthcoming.

Mother obtained counsel for the subsequently-scheduled conciliation conference, and on May 5, 2021, again by stipulation, the court awarded the parties shared legal custody, Mother primary physical custody, and Father partial physical custody on alternating weeks from Thursday at 3:00 p.m. until Sunday at 9:00 p.m. **See** Order, 5/5/21, at ¶¶ 1-2. In addition,

---

the appellate court, in its discretion, to allow correction of the error, where appropriate."); **Oster v. Serfass Constr. Co., Inc.**, 2022 WL 3440490 at *2 n.4 (non-precedential decision) (Pa.Super. 2022) (overlooking procedural deficiency caused by appellant filing one notice of appeal from two trial court orders). Here, we opt to exercise our discretion to overlook Mother's procedural misstep, deem done what should have been done, and treat this matter as a consolidated appeal of the two orders entered on March 8, 2022.

[2] The trial court observed, and our review of the certified records confirms, that the parties filed seven emergency petitions for special relief, five petitions for modification of the custody order, and three petitions for contempt. **See** Trial Court Opinion, 5/5/22, at 1 n.1.

notwithstanding Mother's two previously filed *pro se* notices of her proposed relocation, she subsequently stipulated in the May 5, 2021 order that any parent seeking to relocate may not do so "unless the other parent consents in writing or the Court approves the proposed relocation," and the parent seeking to relocate must follow the procedures set forth in 23 Pa.C.S. § 5337. ***Id***. at ¶ 24.

Less than two weeks after the entry of the stipulated custody order, Mother filed a petition for contempt, wherein she alleged that Father "consistently refuses to abide by the court order." Petition for Contempt, 5/17/21, at ¶ 5. Specifically, Mother alleged that, on May 11, 2021, "I went to pick up [R.L.], . . . and [Father] refused to bring my baby out." ***Id***. In addition, on May 17, 2021, Mother filed *pro se* a petition for modification of the May 5, 2021 custody order, wherein she requested sole legal and physical custody.

Thereafter, as stated by the trial court, Mother filed a Protection from Abuse ("PFA") petition against Father on June 1, 2021, "which included the minor child, and the temporary [PFA] order was issued. Following the hearing, for which [Father] did not appear, a final [PFA] order was issued on June 23, 2021, which does not include the minor child. That [o]rder expired on September 23, 2021." Trial Court Opinion, 5/5/22, at 5 n.3. Meanwhile, on June 3, 2021, Mother filed yet another *pro se* petition for modification.

A non-record custody conciliation occurred on July 29, 2021, during which Father was represented, but Mother attended *pro se*. As best we can discern from the certified record, Mother revealed during the conciliation that she had relocated out-of-state with R.L.

No order was issued disposing of Mother's three outstanding *pro se* petitions. However, by *interim* order entered on August 6, 2021, the trial court directed that R.L. "shall return to and remain in Dauphin County immediately." Interim Order, 8/6/21, at ¶ 1. In addition, the trial court ordered the parties to continue to follow the terms of the May 5, 2021 custody order.

On August 31, 2021, Father filed an emergency petition for special relief, wherein he alleged that Mother moved to Florida with R.L., and that he had not interacted with R.L. since June 1, 2021. **See** Emergency Petition, 8/31/21, at ¶ 16. The trial court scheduled an evidentiary hearing for September 22, 2021, and appointed a guardian *ad litem* ("GAL") to represent R.L.'s best interests during the custody proceedings. On September 23, 2021, the trial court granted Father's emergency petition, and repeated its directive that Mother return R.L. to Dauphin County and abide by the May 5, 2021 custody order. We quashed as untimely Mother's appeal from the September 23, 2021 order directing R.L.'s return to Pennsylvania.

On October 13, 2021, Father filed a petition for contempt, wherein he alleged that Mother was in contempt of the May 5, 2021 custody order by

"refusing to return" R.L. to Dauphin County and "refusing to allow" him to exercise his custodial rights. Petition for Contempt, 10/13/21, at ¶ 21. Father again alleged that he had not seen R.L. since June 1, 2021. He requested that the court hold Mother in contempt and grant him "full legal and physical custody." Petition for Contempt, 10/13/21, at 4 (unpaginated).

On January 14, 2022, Mother filed a motion to continue the contempt proceedings due to a COVID-19 related family emergency. The trial court ultimately granted the motion and continued the hearing to March 3, 2022. The re-scheduling order noted, "This will be the final continuance granted in this matter." Scheduling Order, 1/20/22, at 1. Approximately two weeks later, Mother sought a second continuance because her daughter "was involved in a tragic accident and sustained severe injuries." Motion for Continuance, 2/7/22, at 1. The Court denied that motion the following day.

Mother did not attend the March 3, 2022 hearing on the parties' competing petitions for contempt. At the outset of the hearing, the trial court stated its intention to summarily dismiss Mother's petition due to her failure to appear. N.T., 3/3/22, at 2. In so doing, the court referenced Mother's formal requests for continuances and noted her *ex parte* email communications with the trial court requesting further extensions. ***Id***.

Father, who appeared at the hearing with legal counsel, testified about his frustratingly futile interactions with Mother, generally, his attempts to contact R.L., specifically, and his current living arrangement, which included

exercising shared physical custody of his fourteen-year-old son from a prior relationship. *Id*. at 3-5. At the conclusion of the evidence, Father requested, with the agreement of the GAL, an order granting him sole legal custody and physical custody of R.L. and the issuance of a warrant to register the custody order in Georgia and/or Florida pursuant to the Uniform Child Custody Jurisdiction and Enforcement Act, 23 Pa.C.S. §§ 4501-5482. *Id*. at 7-8.

On March 8, 2022, the trial court entered a pair of orders that respectively (1) dismissed Mother's petition for contempt based on her failure to appear; and (2) granted Father's petition for contempt, awarded Father sole legal and physical custody of R.L., and authorized law enforcement to take custody of R.L. if necessary.

As noted *supra*, Mother filed a single notice of appeal that referenced "the orders from March 8, 2022," and attached copies of the respective orders. Notice of Appeal, 4/4/22, at 1. She concurrently filed a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b). Therein, Mother raised a litany of allegations assailing, *inter alia*, (1) the trial court's partiality; (2) the finding of contempt against her; (3) Father's general parenting ability; (4) the trial court's refusal to grant her request for a continuance of the March 3, 2022 hearing; and (5) the concomitant dismissal of her petition for contempt due to her failure to appear. The trial court filed a Rule 1925(a) opinion that addressed each of these concerns and explained

the court's rationale for awarding Father sole legal and physical custody of R.L.

On appeal, Mother presents one issue for review:

The law states that when there are safety concerns and a parent is not abiding by an order, that is NOT considered contempt, therefore, [Father] should have never been granted a contempt hearing in the first place. They never held him in contempt for violating the custody order in the months of February through May, so how dare they try to hold me in contempt. I filed relocation papers and he didn't respond with a counter affidavit[,] so he is at fault for not seeing [R.L.] for so long. [Father] has also refused to agree to the visitation schedule after several attempts.

Mother's brief at 8.[3]  Neither Father nor the GAL filed a brief in this Court.

We review the subject orders pursuant to an abuse of discretion standard, which occurs if the trial court "misapplies the law or exercises its discretion in a manner lacking reason. Similarly, the trial court abuses its discretion if it does not follow legal procedure." *K.M.G. v. H.M.W.*, 171 A.3d 839, 844-845 (Pa.Super. 2017) (citation omitted).

The Child Custody Act provides that "[a] party who willfully fails to comply with any custody order may, as prescribed by general rule, be adjudged in contempt." 23 Pa.C.S. § 5323(g)(1). This Court stated:

"To be in contempt, a party must have violated a court [o]rder, and the complaining party must satisfy that burden by a preponderance of the evidence." *Hopkins v. Byes*, 954 A.2d

---

[3] In addition, Mother filed in this Court an application for relief requesting that we consider "new[-]found information" that supports her challenge to Father's parental fitness. Application for Special Relief, 9/6/22, at 1. As we are not a fact-finding court, we deny the application for relief without prejudice to Mother's ability to present the information in the trial court, ostensibly in yet another motion to modify the custody arrangement.

654, 655 (Pa. Super. 2008) (citation omitted). Specifically, "the complainant must prove certain distinct elements[:] (1) that the contemnor had notice of the specific order or decree which he is alleged to have disobeyed; (2) that the act constituting the contemnor's violation was volitional; and (3) that the contemnor acted with wrongful intent." **P.H.D. v. R.R.D.**, 56 A.3d 702, 706 n.7 (Pa.Super. 2012).

**J.M. v. K.W.**, 164 A.3d 1260, 1264 (Pa.Super. 2017) (*en banc*).

We begin with Mother's challenge to the order dismissing her contempt petition due to her failure to appear at the evidentiary hearing.

Mother asserts,

[I] was unable to attend because I was exposed to the coronavirus and contracted it from my grandmother. The judge knew this and still refused to continue the hearing to a later date. On top of that, my daughter was involved in a fatal accident and sustained severe injuries. I shared the news article with [Father,] and he knows that[,] for these reasons, I told him I was not coming to the hearing on March 3, 2022. If the judge had held a contempt hearing when I filed in 2021, [Father] would have lost custody and that is exactly why Judge Marsico did not grant me a hearing sooner.

Mother's brief at 5-6 (cleaned up).

As this matter implicates the trial court's denial of Mother's latest request for a continuance, the following legal principles are relevant to our review.

The grant or denial of a motion for a continuance is within the sound discretion of the trial court and will be reversed only upon a showing of an abuse of discretion. An abuse of discretion is not merely an error of judgment; rather discretion is abused when the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill will, as shown by the evidence or the record. Moreover, a bald allegation of an insufficient amount of time to prepare will not provide a basis for reversal of the denial of a continuance

motion. An appellant must be able to show specifically in what manner he was unable to prepare for his defense or how he would have prepared differently had he been given more time. We will not reverse a denial of a motion for continuance in the absence of prejudice.

*Commonwealth v. Antidormi*, 84 A.3d 736, 745-46 (Pa.Super. 2014) (cleaned up).

In its Rule 1925(a) opinion, the trial court explained:

While [Mother] repeatedly complained of an implied unfairness to her for this court's failure to schedule a contempt hearing, once scheduled, [Mother] requested to have the hearing continued on two separate occasions. Alternatively, in correspondence with this court, [Mother] maintained that she would not appear for a contempt hearing.

Trial Court Opinion, 5/5/22, at 5. The certified record supports the court's findings.

Specifically, the certified docket reflects that the trial court originally scheduled the subject proceeding for January 21, 2022. One week prior to that date, January 14, 2022, Mother filed a motion for continuance, which the trial court granted on January 20, 2022. The court rescheduled the hearing for March 3, 2022. In doing so, the court stated it will be the final continuance. Mother filed another motion for continuance on February 7, 2022, which the court denied the next day. She subsequently notified the court *via* e-mail that she would not attend the hearing. *Id*. at 3 n.2. In addition, during the hearing, Father testified that Mother "sent me a message and said, just a heads up, I'm not coming" to the subject proceeding. N.T., 3/3/22, at 6. In light of the foregoing, we discern no abuse of discretion in the trial court's

decision to deny Mother's serial request for a continuance and to dismiss her contempt petition after she failed to appear at the hearing and present evidence in support of her assertions.

Next, with respect to Mother's claim that the court abused its discretion in granting Father's contempt petition, she alleges bias throughout the entirety of this case by the trial court, the custody conciliators, Father's counsel, and the GAL. **See** Mother's brief at 4, 6, 11-12. Mother contends, without support, that "they ignored everything I said and ruled in [Father]'s favor just to appease their friend[, counsel for Father]." **Id**. at 4. Mother alleges that the trial court's partiality has "disregarded my baby's safety and best interest." **Id**. at 2.

Mother contends that Father poses a threat to R.L.'s safety because he allegedly (1) is a convicted felon related to the sale of illegal drugs; (2) "comes from a family of drug addicts and thugs"; and (3) is mentally ill. **Id**. at 2, 5, 7. Mother implies that she moved out of state with R.L. due to these safety concerns. Mother asserts she filed a relocation petition to which Father did not file a counter-affidavit. Therefore, Mother claims, it is Father's "fault for not seeing [R.L.] for so long." **Id**. at 8.

Mother also baldly asserts that Father was in contempt of the original custody order during the months of February, March, April, and May of 2021. **Id**. at 2; Rule 1925(b) statement at 1 (unpaginated). She characterizes Father's conduct as "parental kidnappings," but she neglects to describe his

- 10 -

behavior or explain how it is tantamount to kidnapping. Mother's brief at 2. In this vein, she flatly demands "to be reunited with my son, who was wrongfully taken away from me." *Id*. at 12.

In granting Father's petition for contempt, the court explained that Mother "continues to make allegations regarding Father, including his mental health, that she has failed to substantiate at any point during these custody proceedings." Trial Court Opinion, 5/5/22, at 6. The court further reasoned that Mother

> was in contempt for her repeated failure to follow the directives of the court. [Mother]'s blatant disregard for any order issued by this court has become a pattern of behavior expected from [Mother]. . . . Further, during a September 22, 2021 hearing in this matter, [Mother] stated several times that she was not going to follow any order(s). (N.T., 9/22/21, [at] 10, 15, 17).

> Further, while [Mother] has refused to confirm her whereabouts, she has essentially acknowledged that she has moved out of Pennsylvania, specifically Dauphin County, with [R.L.]. . . . [Mother] has proven by her words and conduct that she will not follow any order issued by this court. Aside from [Mother]'s brazen disregard for this court's scheduling orders, she has also completely ignored this court's custody order(s) [directing her to return R.L. to Pennsylvania]. . . Accordingly, it was not error to find [Mother] in contempt of court.

Trial Court Opinion, 5/5/22, at 5-6 (cleaned up). Our review of the certified record confirms these findings.

Father testified that he last saw R.L. on June 1, 2021. *See* N.T., 3/3/21, at 4. He indicated that R.L. was in his physical custody on that date, but "[t]hey just came to my house, and they took him." *Id*. Father does not specify who removed R.L., but he explained that after Mother obtained the

- 11 -

PFA order against him on behalf of her and R.L., and the child was removed for that reason. *Id*. Father explained that he subsequently retained counsel "to reverse" the PFA order prohibiting his contact with R.L., and although the final PFA order did not apply to R.L., "I haven't seen my son since." *Id*. Father further described Mother's evasiveness, "I get calls and other correspondence" from Mother, but she has not provided her specific location or address. *Id*. at 5. He testified, "She . . . recently told me she was in Valdosta, Georgia, and asked me to fly there and get my son. This is the second or third time she [has] asked me to fly there." *Id*. at 4. Based on the foregoing, and our review of the entirety of the certified record, it is clear that Mother has prevented Father from exercising his physical custody since approximately June 23, 2021, when the final PFA order was issued which did not include R.L.

Furthermore, the certified record supports the court's determination that Father proved by a preponderance of the evidence that Mother had notice of the order instructing her to return R.L. to Pennsylvania and willfully failed to comply with that directive. Indeed, as the trial court accurately observes, Mother foretold her intentions during the September 22, 2022 hearing involving Father's emergency petition for special relief when she "stated several times that she was not going to follow any order(s). (N.T., 9/22/21, [at] 10, 15, 17)." Trial Court Opinion, 5/5/22, at 5. During that same hearing, Mother defended relocating with R.L., without Father's or the court's approval, because she had filed a notice of relocation. N.T., 9/22/21, at 10. However,

the trial court accurately clarified on the record and in open court, "You did file that but then after that there was an agreed-upon custody order that was entered into after you file[d] the relocation." *Id*. The trial court's statement is accurate. As noted *supra*, the record bears out that notwithstanding Mother's previously-filed *pro se* notices of her proposed relocation, Mother subsequently consented to the custody order requiring her to obtain Father's consent or the court's approval prior to relocation. As Mother neglected to secure either consent or approval for the relocation and failed to return the child to Pennsylvania when ordered to do so, we do not disturb the finding of contempt.

Finally, we review whether the trial court abused its discretion in modifying the May 5, 2021 custody order by granting Father sole legal and physical custody. This issue implicates the following principles of law:

> It is settled that an adjudication of contempt is not a proper basis to modify an existing custody arrangement. **See Clapper v. Harvey**, 716 A.2d 1271, 1275 (Pa.Super. 1998) ("[A] mother's violation of a custody order may be an appropriate foundation for a finding of contempt, but it cannot be the basis for an award of custody"); **Rosenberg v. Rosenberg**, 504 A.2d 350, 353 ([Pa.Super.] 1986) ("A custody award should not be used to reward or punish a parent for good or bad behavior"). This Court has confronted several cases where the trial court awarded one party custody as a sanction for the other party's contumacious conduct. **See e.g. Langendorfer v. Spearman**, 797 A.2d 303 (Pa.Super. 2002); and **Everett v. Parker**, 889 A.2d 578, 581 (Pa.Super. 2005); **cf. Steele v. Steele**, 545 A.2d 376 (Pa.Super. 1988) (noting that it is generally improper for trial court to modify custody arrangements without petition for modification before it). **The effect of this jurisprudence is that a trial court's ability to alter custody as a contempt sanction is restricted to circumstances where the responding party is given express**

- 13 -

**notice that custody will be at issue during the contempt proceeding and the modification is based upon the determination of the child's best interest**.

*J.M.*, *supra* at 1267 (cleaned up) (emphasis added).

In explaining the basis for its custody decision, the trial court noted that Father requested sole legal and physical custody in his contempt petition. *See* Trial Court Opinion, 5/5/22, at 6-7. As such, the court explained, "While this matter has a protracted procedural history due to multiple filings, the crux of the filings made by Father have consistently challenged underlying custody." *Id*. at 7. The certified record supports the court's findings, and its conclusion is reasonable that Mother had "express notice that custody will be at issue" during the March 3, 2022 contempt proceeding.

Furthermore, the trial court determined that the change of physical and legal custody served R.L.'s best interest. It observed, "modifying the custody order was the only option that would allow Father access to [R.L.], which is in the best interests of [R.L.]. Because [Mother] unilaterally decided to withhold custody of [R.L.] from Father, and because preserving Father's relationship with [R.L.] is in [R.L.]'s best interests, the court did not abuse its discretion in granting Father sole legal and physical custody." Trial Court Opinion, 5/5/22, at 7. Mother's general protestations against the trial court's decision do not warrant relief.[4] *See J.M.*, *supra* at 1267. Accordingly, we affirm the

_____

[4] Significantly, Mother does not assert that the trial court erred in awarding Father sole physical custody without considering the mandated best-interest

*(Footnote Continued Next Page)*

orders disposing of the respective petitions for contempt and granting Father

sole legal and physical custody of R.L.

Orders affirmed.  Application for Special Relief, filed September 6, 2022,

denied without prejudice.

P.J.E. Stevens joins this Memorandum.

Judge King concurs in the result.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/8/2022

---

factors outlined in 23 Pa.C.S. 5328(a), which requires the court to consider the factors "[i]n ordering any form of custody."  As this potential claim does not implicate jurisdiction, we do not address it *sua sponte*.  **See Turner Const. v. Plumbers Local 690**, 130 A.3d 47, 63 (Pa.Super. 2015) ("[I]t is improper for this Court to address the non-jurisdictional issue *sua sponte* as a grounds for reversal.").