J-A04005-24

2024 PA Super 155

| | | |
|---|---|---|
| NICOLE EVA GROSS o/b/o I.M., J.M., J.M. | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | : | |
| v. | : | |
| | : | No. 1735 EDA 2023 |
| JARED ZALMAN MINTZ | : | |

Appeal from the Order Entered June 28, 2023
In the Court of Common Pleas of Montgomery County
Civil Division at No:  2023-10036

BEFORE:  STABILE, J., McLAUGHLIN, J., and COLINS, J.[*]

OPINION BY STABILE, J:                    **FILED JULY 24, 2024**

Appellant, Nicole Eva Gross ("Mother"), appeals from the June 1, 2023 order in the Montgomery County Court of Common Pleas that, *inter alia*, granted the motion *in limine* filed by Appellee, Jared Zalman Mintz ("Father"), and vacated the May 19, 2023 temporary protection from abuse ("PFA") order entered against Father.[1]  We affirm.[2]

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] Mother purports to also appeal from the June 28, 2023 order denying her motion for reconsideration filed on June 9, 2023, as amended on June 15, 2023.  Because an appeal does not lie from an order denying reconsideration, we do not consider it.  ***See J.P. v. J.S.***, 214 A.3d 1284, 1289 (Pa. Super. 2019) (reiterating that "an appeal will not lie from the denial of a motion for reconsideration") (citing ***Valentine v. Wroten,*** 580 A.2d 757, 397 Pa. Super. 526 (1990)).

[2] The Honorable Daniel J. Clifford presided over the subject proceeding.

On May 19, 2023, Mother filed a PFA petition against Father on behalf of her twin fifteen-year-old daughters, I.M. and J.M. ("Ju.M."), and eleven-year-old son, J.M. (collectively, "the children"), whom she shares with Father.[3, 4] Mother alleged that Father took sexually exploitative photos of the children on unspecified dates. Mother attached, *inter alia*, an emergency petition for special relief in custody that she filed on May 17, 2023, wherein she averred that Father maintained photographs and videos that he "has taken of all three children over the years . . . to obtain perverted sexual gratification and/or to market these images to pedophiles." PFA Petition, 5/19/23, at Exhibit C, ¶ 6. Consequently, Mother requested sole physical and legal custody of the children and that Father's contact with them "be suspended indefinitely." *Id.* at ¶ 11.

The Honorable Kelly C. Wall issued a temporary PFA order on the day Mother's PFA petition was filed, which provided, in part, that Mother "shall present evidence that the photos in question were **newly** taken and/or

---

[3] The parties, formerly husband and wife, separated in 2016, and they divorced in March of 2019. *See* PFA Court Opinion, 8/15/23, at 1.

[4] In its opinion pursuant to Pa.R.A.P. 1925(a), the PFA court explained, "From 2020 to May 2023, Mother has filed at least seven (7) PFA petitions in Montgomery County and at least three (3) others that the undersigned is aware of, some of which have since been expunged. . . ." *Id.* at 1-2.

discovered and not part of photos presented in past PFA litigation."[5] Temporary PFA Order, 5/19/23, at ¶ 9 (emphasis in original). The court scheduled a final PFA hearing for June 1, 2023.

---

[5] A prior panel of this Court declared that "the parties are well known to this Court." *Gross v. Mintz*, 2024 Pa. Super. Unpub. LEXIS 278 (Pa. Super. February 8, 2024) (unpublished memorandum). Specifically, we listed Mother's appeals, as follows.

> *See Gross v. Mintz*, 285 A.3d 934, 2022 WL 4242456 (Pa. Super. 2022) (unpublished memorandum) (affirming the denial of Mother's October 2021 PFA petition), *appeal denied*, 293 A.3d 562 (Pa. 2023); *see also Gross v. Mintz*, 284 A.3d 479 (Pa. Super. 2022) (affirming the grant of Father's petition for contempt and the imposition of a requirement that Mother obtain court approval before filing PFA petitions that interfered with Father's custodial rights), *appeal denied*, 293 A.3d 563 (Pa. 2023).
>
> Mother has taken other appeals related to the same facts in the instant appeal. *See* 2157 EDA 2023 (quashed appeal from an order striking an affidavit), *petition for allowance of appeal filed*, 593 MAL 2023. Additionally, it appears that Mother filed another PFA petition in May 2023 and appealed from the dismissal of that petition. *See* 1735 EDA 2023 (pending appeal). She has also appealed numerous preliminary orders in a custody proceeding. *See* 743 EDA 2023 (quashed appeal from an order for a mental evaluation); 1082 EDA 2023 (quashed appeal from an order for a mental evaluation); 1506 EDA 2023 (quashed appeal from an order denying recusal); 1755 EDA 2023 (quashed appeal from an interlocutory order granting Father's motion); 1995 EDA 2023 (discontinued appeal); 2015 EDA 2023 (quashed appeal from a pre-hearing order on evidence and mode of presentation); 2016 EDA 2023 (quashed appeal from pre-hearing order on evidence and mode of presentation; sanctions imposed); 2411 EDA 2023 (quashed appeal from an order denying Mother's proffer of photographs; sanctions imposed); 109 EDM 2023 (denial of a petition to stay).

*Id.* at *1, n.1.

On May 23, 2023, Father filed a motion *in limine,* wherein he similarly requested that the PFA court preclude at the final hearing the admission of photographs/videos "that were produced prior to the parties' separation in 2017. . . ." *Id.* at ¶ 9. Father alleged that Mother had previously filed petitions accusing him of abusing the children by taking "these same allegedly sexually-explicit photographs/videos." Motion *in limine*, 5/23/23, at ¶ 3. Father averred that the Lower Merion Police Department, the Montgomery County Office of Children and Youth ("OCY"), and the children's prior court-appointed child advocate, Robert Angst, Esquire, "examined the alleged photographs/videos taken *prior to 2017*, when the parties separated, and determined that [Mother's accusations] were unfounded." *Id.* at ¶ 3 (emphasis in original). Further, Father averred that the parties participated in an evaluation by Dr. Arnold Shienvold in connection with the custody litigation, wherein he reviewed photographs provided by Mother "and found no sexual or improper actions" by Father. *Id.* at ¶ 4.

By way of further background, the PFA court explained in its opinion pursuant to Pa.R.A.P. 1925(a), as follows.

> While the PFA petition subject to the instant appeal was filed on May 19, 2023, this round of PFA litigation truly began on January 27, 2023, when Mother filed a PFA petition on behalf of herself and the three children. In this petition, Mother alleged that Father's abuse and neglect caused the minor child, I.M., to attempt suicide. In pertinent part, the petition further stated that Father took and kept sexually exploitive photographs of the children. A temporary order was granted on that same day by the Honorable Todd D. Eisenberg on behalf of the children only.

The final PFA hearing was then conducted by the Honorable Kelly C. Wall on February 2, 2023. Judge Wall is also the assigned judge to the parties' ongoing custody litigation. During the February 2nd PFA hearing before Judge Wall, the photographs that were allegedly sexually explicit were addressed. One of the three minor children testified, and there were no findings of abuse. [By order entered on February 3, 2023,] Judge Wall denied Mother's request for the entry of a final order and vacated the temporary PFA order.

Notably, Mother did not file an appeal of this final [PFA] order within thirty-days. Instead, on April 28, 2023, over two and one-half months later, Mother filed a [*nunc pro tunc*] appeal; well beyond the thirty-day deadline pursuant to Pa.R.A.P. 903(a).[7] Proceedings in that PFA case continue to date regarding the release of the sealed child testimony and expungement, with two more appeals filed by Mother [in the Superior Court]. . . .[8]

On May 19, 2023, just three and one-half months after the denial order entered on the PFA petition she filed on January 27, 2023, Mother filed yet another PFA petition against Father on behalf of the children, which is the subject of the instant appeal.

_____

[7] *See Gross v. Mintz*, 1121 EDA 2023 [(Pa. Super. June 2, 2023) (*per curiam* order quashing Mother's appeal from the February 3, 2023 order denying her PFA petition as untimely)].

[8] *See Gross v. Mintz*, [2024 Pa. Super. Unpub. LEXIS 278 (Pa. Super. January 29, 2024) (unpublished memorandum) (dismissing as moot Mother's appeal from order denying her request for a transcript of Ju.M.'s *in camera* interview at the February 2023 PFA hearing wherein she "asserted that Father had recently taken, posted, or emailed sexually exploitative photographs or videos of the children's genitalia." *Id.* at \*2. Further, "Father objected and asserted that Mother was discussing pictures taken when the children were babies and that those allegations had been the subject of prior investigations and prior PFA petitions." *Id.*)]; [*see also*] *Gross v. Mintz*, 1507 EDA 2023 [(Pa. Super. July 14, 2023) (*per curiam* order quashing Mother's appeal from May 9, 2023 interlocutory order denying her motion for recusal in the PFA matter)].

PFA Court Opinion, 8/15/23, 3-4 (some footnotes omitted; cleaned up).

The subject PFA hearing occurred on June 1, 2023. The PFA court explained:

> When the proceeding began, Mother immediately made an oral motion for the undersigned to recuse himself. The court heard argument by counsel, and received Mother's testimony on recusal, after which this request was denied with Mother having failed to demonstrate a legitimate basis for recusal.
>
> The undersigned then turned to Father's motion *in limine* and received testimony from two witnesses: Mother and Denae Sweeny, supervisor of the investigative unit of [OCY]. The parties' attorneys were provided with the opportunity for direct and cross-examination of the witnesses. Ultimately, it was demonstrated that allegedly inappropriate photographs were both previously investigated by numerous child protective and law enforcement entities (in addition to the evaluator in the custody case) **and** were not newly taken, nor newly discovered, pursuant to the directives set forth by Judge Wall in the temporary PFA order.
>
> The undersigned proceeded to enter an order [dated and entered on June 1, 2023,] denying Mother's oral motion for recusal, granting Father's motion *in limine*, denying Mother's request for a final PFA order, and vacating the temporary PFA order entered on May 19, 2023.

PFA Court Opinion, 8/15/23, at 6-7 (emphasis in original).

On July 3, 2023, Mother timely filed a notice of appeal and a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b). The PFA court filed its Rule 1925(a) opinion on August 15, 2023.[6]

_____

[6] In its Rule 1925(a) opinion, the PFA court opined that Mother has waived her appellate issues by filing a nine-page Rule 1925(b) statement that asserted twenty-six errors. **See** PFA Court Opinion, 8/15/23, at 12-13; **see also Commonwealth v. Ray**, 134 A.3d 1109, 1114 (Pa. Super. 2016) ("The
*(Footnote Continued Next Page)*

On appeal, Mother raises the following issues for review:

1. Did the trial court err as a matter of law or abuse its discretion in granting [Father]'s motion *in limine* and in dismissing the PFA petition, where [Father] did not prove that *res judicata* precluded this petition?

2. Did the trial court err as a matter of law or abuse its discretion in relying on the inaction of the Office of Children & Youth and/or law enforcement regarding unspecified photographs as a basis to deny and dismiss the PFA petition?

3. Did the trial court err as a matter of law or abuse its discretion in relying on information outside of the record and evidence in this case as a basis to dismiss this PFA petition?

4. Did the trial court err as a matter of law or abuse its discretion in dismissing the PFA petition without allowing [Mother] to present evidence in support of the petition?

Mother's Brief at 6-7.

In her first issue, Mother argues that the PFA court erred in granting Father's motion *in limine* and dismissing her PFA petition based on the doctrine of *res judicata*. Father counters that the PFA court based its decision on the doctrine of collateral estoppel, and that the court did not err. **See** Father's Brief at 10. Upon review, we conclude that Mother is not entitled to relief.

---

Pa.R.A.P. 1925(b) statement must be sufficiently 'concise' and 'coherent' such that the trial court may be able to identify the issues to be raised on appeal[.]"). We agree with the PFA court that Mother's Rule 1925(b) statement is not sufficiently concise. Nonetheless, the PFA court was able to find coherent Mother's asserted errors and provided its reasoning underlying the June 1, 2023 order in its Rule 1925(a) opinion. **See** PFA Court Opinion, 8/15/23, at 14-26. Based upon the foregoing, we will not deem Mother's issues waived. **See**, **e.g.**, **Ray**, **supra** at 1114.

"Application of the doctrines of *res judicata* and collateral estoppel is a question of law requiring *de novo* review and the scope of review is plenary." **Moyer v. Shaffer**, 305 A.3d 1064, 1067 (Pa. Super. 2023) (citing **K.D. v. E.D.**, 267 A.3d 1215, 1223 (Pa. Super. 2021)).

This Court has explained:

> "The doctrine of *res judicata* applies to prevent litigants from bearing the burden of re-litigating the same issues with the same parties, and to promote judicial economy." **E.K. v. J.R.A.**, 237 A.3d 509, 521 (Pa. Super. 2020) (citation omitted). *Res judicata*, or claim preclusion, bars the re-litigation of a previously litigated claim or cause of action when the following elements are the same across both actions: the identity of (1) the thing sued upon; (2) the cause of action; (3) persons and parties to the action; and (4) the quality or capacity of the parties suing or being sued. **K.D. v. E.D.**, 267 A.3d at 1224. Essentially, "[u]nder the doctrine of *res judicata*, **a judgment on the merits in a prior suit** bars a second suit on the same cause of action[.]" **Wilmington Tr., Nat'l Ass'n v. Unknown Heirs**, 219 A.3d 1173, 1179 (Pa. Super. 2019) (emphasis added). "The dominant inquiry under those elements, then, is whether the controlling issues have been decided in a prior action, in which the parties had a full opportunity to assert their rights." **E.K. v. J.R.A.**, 237 A.3d at 521 (citation omitted).

**Moyer**, **supra** (emphasis in original).

Collateral estoppel is "also referred to as issue preclusion. . . ." **Id.** This Court has stated that collateral estoppel

> is a broader concept than *res judicata* and "operates to prevent a question of law or issue of fact which has **once been litigated and fully determined** in a court of competent jurisdiction." **Vignola v. Vignola**, 39 A.3d 390, 393 (Pa. Super. 2012) (emphasis added and citation omitted). Collateral estoppel applies if:
>
> > (1) the issue decided in the prior case is identical to one presented in the later case; (2) there was a **final**

> **judgment on the merits**; (3) the party against whom the plea is asserted was a party or in privity with a party in the prior case; (4) the party or person privy to the party against whom the doctrine is asserted had a **full and fair opportunity to litigate the issue** in the prior proceeding and (5) the determination in the prior proceeding was essential to the judgment.
>
> ***E.K. v. J.R.A.***, 237 A.3d at 521 (emphasis added and citation omitted).

***Id.*** In sum, "both *res judicata* and collateral estoppel require that an initial action result in a final judgment **on the merits** before either doctrine can be applied to bar a second action raising similar claims or issues." ***Id.*** at 1068 (emphasis in original).

Instantly, the PFA court concluded that Mother failed to demonstrate "newly taken" or "newly discovered" photographs from those she presented in the January 2023 PFA petition that was litigated on the merits, and resulted in the February 3, 2023 order denying her request for a final PFA order. The record supports the court's conclusion.

Specifically, Mother testified that, during the parties' divorce litigation "at the end of 2017," she was permitted by court order to copy material stored on the family computer located in the marital home, and that she retained information technology ("IT") experts to do so. ***See*** N.T., 6/1/23, at 113-115, 149-150. The photographs in question were discovered on the family computer and/or backed up in "the cloud." ***Id.*** at 114-115, 151. Mother testified on cross-examination:

Q. During one of the breaks we've had, your counsel . . . showed me . . . a whole bunch of photographs that he intends to use if we even get that far in these proceedings; do you understand that?

A. Yes.

Q. Have you seen those photographs?

A. Yes.

Q. Did you supply them to [your counsel]?

A. Yes.

Q. Are any of those photographs that he has shown me taken after 2017?

A. I don't believe so.

*Id.* at 114. Mother further testified that Father has had no contact with their twin daughters since January 16, 2023, and with their son "until recently" due to an *interim* custody order. N.T., 6/1/23, at 133-134.

Thus, the record supports the court's conclusion that the photographs were not "newly taken" since Mother's last PFA petition in January 2023. **Id.** at 139; PFA Court Opinion, 8/15/23, at 18-19. The court's conclusion was based upon finding, *inter alia* (1) "Mother had access to all of the famil[y]'s photographs that were taken prior to the parties' separation in 2017 *via* a sweep of Father's computer by IT professionals of her own choosing;" and that (2) Mother produced the same photographs in her January 2023 PFA filing which were "addressed by Judge Wall in a [final PFA] hearing." PFA Court Opinion, 8/15/23, at 19. Moreover, that final hearing resulted in Judge Wall entering a judgment on the merits on February 3, 2023. Because the record

supports the court's findings, we hold that the court did not err in granting Father's motion *in limine* and vacating the May 19, 2023 temporary PFA order under both *res judicata* and collateral estoppel. Based upon this disposition, we need not review Mother's remaining issues on appeal.

Regrettably, our affirmance of the trial court does not resolve all concerns relating to this ongoing and very contentious matter. A brief review of the trial court docket from when this matter was commenced in 2017 to the present, reveals a very disturbing pattern of conduct by Mother. Since 2017, it seems Mother has had no less than 12 counsel enter their appearance in this ongoing litigation. There have been more than a dozen contempt filings. There have been at least 10 PFA petitions – none of which have resulted in a final order, and Mother has filed more than 17 appeals to this Court. She continues to press matters dismissed by one court only to recast and refile the same matters over again. Without a doubt, this course of conduct demonstrates a clear abuse of our judicial system and an unnecessary and very wasteful exhaustion of judicial resources. Out of a clear sense of frustration, the trial court recounted this sad litany of litigation to us and essentially implores us to answer the following,

> . . . whether a parent can repeatedly use the PFA process to litigate and re-litigate the same claims that have already been both investigated by the appropriate authorities *and* contained in prior custody and PFA proceedings.
> ***
> At what point does the system refuse to permit the consumption of precious judicial resources, over and over

- 11 -

again, to address the serial filings of one party that have been previously investigated/ addressed/ dismissed?

How many new PFA cases, filed by litigants in other cases, must stand-in-line and wait while Mother's repeated PFA filings are litigated and relitigated?

At what point is it appropriate for the [c]ourt to 'call out' an instance when there is obvious abuse of the abuse process; continually providing yet another 'bite of the apple' to litigants who only discover yet a new basis for filing a PFA just months after the last one is denied?

Trial Court Opinion, 8/15/2023, at 27 (footnote omitted; emphasis in original).

Were this anything other than a family law matter, a court may have been justified some time ago in precluding Mother, acting *pro se*, from filing any claims without first seeking court permission. **See** Pa.R.Civ.P. 233.1(c), (e). The court's previous imposition of sanctions upon Mother does not seem to have had the desired effect. Mother has continued in her course of conduct unabated. It has not gone unnoticed that at the same time Mother has been pursuing PFA relief to keep Father away from the children, the parties are engaged in bitter custody battles with Mother attempting to secure sole legal and physical custody of children. We have cautioned against attempts to leverage PFA proceedings to gain an unfair advantage in custody and reaffirm that caution to Mother instantly. Should Mother's conduct continue, the court may want to consider more severe sanctions.

We observe however, that Mother has been represented by counsel in the past and in the present case. When appropriate, the court, in response to a motion filed or on its own initiative, may impose sanctions upon counsel for

conduct violative of Pa.R.Civ.P. 1023.1(c). **See** Pa.R.Civ.P. 1023.1-1023.4. When appropriate, counsel fees also may be awarded under 42 Pa.C.S.A. § 2503. Given the number of counsel that have entered an appearance on behalf of Mother, it would behoove any additional counsel to thoroughly familiarize themselves with all prior litigation in this case.

Father as well is not without remedies, as Pennsylvania, *inter alia,* recognizes an action for wrongful use of civil proceedings. **See** 42 Pa.C.S.A. § 8351, *et. seq.*

While it is regretful to have to address the trial court's concerns, we would add that while Mother's litigious conduct has been disturbing, nothing said herein by way of caution is meant to deter Mother or counsel from using the court system when there are meritorious grounds for bringing a matter into court. We are sensitive to the ebb and flow of these domestic matters and how quickly environments may change. Ultimately, the parties should not lose sight that the best interests of the children must be considered. We urge the parties to be ever mindful of that and the effect continued litigation may have on the children as the parents continue to address their differences.

Order affirmed.

Judge Colins joins the opinion.

Judge McLaughlin concurs in the result.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 7/24/2024